IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA OHSANN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | |
| | * | 2:07-cv-00875-WKW |
| L. V. STABLER HOSPITAL, et al., | * | |
| | * | |
| Defendants. | * | |

**MOTION FOR LEAVE TO FILE
SUPPLEMENTAL EVIDENTIARY APPENDIX
OF GREENVILLE HOSPITAL CORPORATION AND
COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION**

Richard E. Smith
David B. Walston

Attorneys for Greenville Hospital
Corporation and Community Health System
Professional Services Corporation

**OF COUNSEL:**

CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203-2696
Telephone: (205) 795-6588
Facsimile: (205) 328-7234

Defendants Greenville Hospital Corporation d/b/a L.V. Stabler Hospital, and Community Health System Professional Services Corporation move for leave to file a Supplemental Evidentiary Appendix, a copy of which is attached, in support of their opposition to the putative Plaintiffs' motion for collective class certification pursuant to 29 U.S.C. § 216. In support of this motion, Defendants would show unto the court as follows:

1. Counsel for defendant mis-communicated with his clients and failed to obtain two executed affidavits from witnesses before the close of business on Friday, March 28, 2008.

2. Counsel for Defendants did submit with the original Evidentiary Appendix un-executed affidavits from the two witnesses. (Counsel also submitted five executed affidavits in Defendants' original Evidentiary Appendix)

3. Counsel for Defendants has spoken with counsel for the putative Plaintiffs and he has no objection to the filing of a Supplemental Evidentiary Appendix solely containing these two executed affidavits for the Court's consideration.

4. The executed affidavits are identical in every manner to the un-executed affidavits submitted in the original Evidentiary Appendix, save the exception of proper execution.

Wherefore, counsel for Defendants prays the Court to allow the submission of the attached Supplemental Evidentiary Submission and substituting executed affidavits as Exhibit 1 and Exhibit 6.

/s/ David B. Walston

One of the Attorney for Greenville Hospital Corporation d/b/a L.V. Stabler Memorial Hospital and Community Health Systems Professional Services Corporation

**OF COUNSEL:**

CHRISTIAN & SMALL LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203-2696
Telephone: (205) 795-6588
Facsimile: (205) 328-7234

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Motion for Leave to File Supplemental Evidentiary Appendix was served on the following in accordance with the electronic filing procedures established the United States District Court for the Middle District of Alabama, on this March 31, 2008:

> David R. Arendall, Esq.
> Allen D. Arnold, Esq.
> Arendall & Associates
> 2018 Morris Avenue
> Birmingham, AL 35203

/s/ David B. Walston
Of Counsel

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA OHSANN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | |
| | * | 2:07-cv-00875-WKW |
| L. V. STABLER HOSPITAL, et al., | * | |
| | * | |
| Defendants. | * | |

**SUPPLEMENTAL EVIDENTIARY APPENDIX
OF GREENVILLE HOSPITAL CORPORATION AND
COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION**

## TABLE OF CONTENTS

Affidavit of Carol Harold .................................. Exhibit 1

Affidavit of Matthew Colley ................................. Exhibit 6

# EXHIBIT 1

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA OHSANN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | |
| | * | 2:07-cv-00875-WKW |
| L. V. STABLER HOSPITAL and | * | |
| COMMUNITY HEALTH SYSTEM | * | |
| PROFESSIONAL SERVICES | * | |
| CORPORATION, | * | |
| | * | |
| Defendants. | * | |

| | |
|---|---|
| STATE OF ALABAMA | * |
| COUNTY OF BUTLER | * |

### AFFIDAVIT OF CAROL HAROLD

Before me, the undersigned authority in and for the above-stated county and State, personally appeared Carol Harold, who, on being made known to me and being duly sworn, deposes and says as follows:

1. My name is Carol Harold. I am an adult citizen and resident of Alabama. I have personal knowledge of the facts stated in this affidavit and am otherwise competent to make this affidavit.

2. I am employed by Greenville Hospital Corporation as its Controller. In this capacity I have knowledge regarding the payroll systems and practices of L.V. Stabler Memorial Hospital.

4. Between October 2004 and October 2007, L. V. Stabler established and implemented "Policy D.13, Break/Meal Periods" which states:

1.0 PURPOSE

To establish a policy relating to breaks and meal periods in accordance with state an federal laws.

2.0 DEFINITION

*Workday*   The normal workday for most employees will be eight hours, excluding an unpaid meal period. For some employee classifications, the workday may vary (i.e., 10-, 12- or 24-hours) depending on the work assignment.

3.0 POLICY

All break and meal periods must be in strict compliance with applicable and state and federal laws.

4.0 BREAKS/REST PERIODS

Non-exempt employees may arrange with their supervisor for break(s) or rest period(s) during the workday. Such breaks count as work time, shall be approved in advance with the supervisor, and must not result in an interruption of necessary services. Breaks may not be accumulated or taken at the beginning or end of a shift.

5.0 MEAL PERIODS

Employees who work six or more continuous hours are eligible to receive an unpaid meal period of 30 minutes. The meal period will be unpaid only when the employee is completely off duty. Employees who remain on duty at their workstations during their 30-minute meal period must be paid for the time worked. Meal periods should not be scheduled at the start of end of a shift unless approved in advance by the supervisor. Time worked in lieu of meal periods will be considered for overtime purposes.

### 5.1 EMPLOYEE'S RESPONSIBILITIES

- Employees must clock out for meal periods of more than 30 minutes.
- Employees must clock out for any meal period taken off-site, regardless of duration.
- Employees should complete a Time Card Exception (Form 44) when they miss or encounter a shortened meal period (less than 30 minutes) due to work issues.
- Employees will be required to review and approve a Kronos and/or other payroll detail report that illustrates each meal period deduction and each missed meal period.

A true an correct copy of this policy is attached as Exhibit A.

3. Hourly employees clock in and clock out by scanning employee identification badges into a reader. These readers are located at the back door of the hospital building and in the hallway down the hall from the front door of the hospital through which some employees enter.

4. If an employee fails to scan in or out for some reason, he or she may complete a Payroll Correction Form, a true and correct copy of which is attached

as Exhibit B, indicating the time he or she began work or ceased work. Employees also use this form to report missed time clock punches and duty assignment pay differentials such a Charge Nurse duty, and the use of paid leave time.

5. L. V. Stabler's payroll software, Kronos, automatically deducts thirty minutes from the time reported from the scanning system to account for the unpaid meal breaks employee are supposed to take. Although Policy D.13 states that "Form 44" should be utilized for reporting missed or shortened meal periods, in practice employees used a Payroll Correction Form to report missed or shortened breaks. Employees who submit these forms are paid thirty minutes of time and credited with thirty minutes of actual time worked for overtime purposes for the missed or shortened meal break.

6. At the end of each workweek, the employee's direct supervisor or department manager reviews the Payroll Correction Forms each submitted and initials or signs the form to indicate approval of the corrections requested by employees.

7. An employee's compensation is be calculated using the scanned times and the information from any approved Payroll Correction Form.

Further the affiant says not.

_____
Carol Harold

Sworn and subscribed before me,
this the _28_ day of March, 2008.

_____
Notary Public
My commission expires: _8-7-08_

# EXHIBIT 6

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA OHSANN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO. |
| vs. | * | |
| | * | 2:07-cv-00875-WKW |
| L. V. STABLER HOSPITAL and | * | |
| COMMUNITY HEALTH SYSTEM | * | |
| PROFESSIONAL SERVICES | * | |
| CORPORATION, | * | |
| | * | |
| Defendants. | * | |

| | |
|---|---|
| STATE OF ALABAMA | * |
| COUNTY OF BUTLER | * |

### AFFIDAVIT OF MATTHEW COLLEY

Before me, the undersigned authority in and for the above-stated county and State, personally appeared Matthew Colley, who, on being made known to me and being duly sworn, deposes and says as follows:

1. My name is Matthew Colley. I am an adult citizen and resident of Alabama and work in Greenville, Alabama. I have personal knowledge of the facts set forth in this affidavit and am otherwise competent to make this affidavit.

Page 1 of 7

2.  I am a licensed pharmacist in the State of Alabama. I contract with the Greenville Hospital Corporation serve as its pharmacist and to manage its pharmacy operations. In this capacity, I supervise the work of Pharmacy Technicians employed by Greenville Hospital Corporation in accordance with governing law and regulations. I do not establish the compensation or compensation policies of the Pharmacy Technicians I supervise but I do direct the scheduling of work days, the work to be performed during shifts, and breaks taken during shifts.

3.  When Jessica Bennett worked as a prn Pharmacy Technician for L.V. Stabler, I managed the Pharmacy and supervised her work.

4.  Under my management, the Pharmacy was to be locked unless I was in the hospital. If I left the hospital, the pharmacy was closed and locked. Pharmacy Technicians do not have access to the pharmacy in my absence. The only hospital employee with authorized access to the pharmacy in my absence is the House Supervisor, a licensed nurse and he or she can not supervise Pharmacy Technicians. Accordingly, Pharmacy Technicians are not scheduled to work when I am not working in the hospital pharmacy.

5.  State law also requires a licensed pharmacist to control the dispensing of any controlled substance from the hospital pharmacy. No prescription

medication may be dispensed without a licensed pharmacist's prior approval, except in cases of emergency when the "House Supervisor may obtain a needed medication from the pharmacy. Pharmacy Technicians are not authorized by law to dispense medications without a licensed pharmacist's prior approval. For this reason, there can be no emergency in the hospital requiring a Pharmacy Technician to be called off break because the licensed pharmacist managing the pharmacy has to be present to approve the dispensing of the medication and the pharmacist can perform that task without assistance. The only exception is if the Pharmacy has to respond to a "code." For "codes," it is my protocol that I and the Pharmacy Technician on duty respond to the code to dispense any medications ordered by the responding physician. These instances are rare.

6. During the period in which Jessica Bennett worked as a prn Pharmacy Technician, L.V. Stabler employed two regular Pharmacy Technicians as well. The L.V. Stabler pharmacy was open from 7:00 am to 4:00 pm, Monday through Friday and from 7:00 am to 11:00 am Saturday and Sunday. I worked at all times the pharmacy was open or arranged coverage by another licensed pharmacist if I was on vacation or ill.

7. Monday through Friday, I scheduled the two regular Pharmacy Technicians to assist me when the pharmacy was open. I scheduled one Pharmacy

Technician to work from 7:00 am until 3:30 pm and the other to work from 7:30 am until 4:00 pm. Jessica Bennett filled in as needed. On weekends, I scheduled one Pharmacy Technician to work with me. I had the regular Pharmacy Technicians and the prn Pharmacy Technician rotate weekends.

8. Other than emergency code responses, the work in the pharmacy at L.V. Stabler was routine. Generally, prescriptions for admitted patients were submitted the day or night before they were needed. The nurses on the floors generally administered the prescribed medications to patients at 9:00 am each morning. The medications for each morning's "med passes" were pre-stocked at the nurse stations in a "Pyxis" device. A Pyxis device tracks the medications prescribed, dispensed from the pharmacy and loaded into and removed from the Pyxis and administered to patients. Software monitors the medications loaded in the Pyxis, the date loaded, the person loading the device, the amount of the each medication loaded, the person removing the medications from the Pyxis and the amount removed. The Pyxis software also has minimum and maximum stocking standards for each medication and alerts the pharmacy when the stock is too high or too low. This ensures that the medications can be tracked and that needed medications are readily available at the nurses' stations.

9. Proper stocking of the Pyxis devices was accomplished by me or the Pharmacy Technicians. Prescriptions were delivered to the pharmacy the day or night before the medications were to be administered to the patients by the nurses. The next morning I reviewed and approved the prescriptions and authorized the delivery of medications to the Pyxis devices. Either I or a Pharmacy Technician filled the prescription and delivered the medication to the appropriate nurses' station and loaded the Pyxis device. The loading of all Pyxis devices was completed before 8:30 am so the nurses could make their med pass at 9:00 am.

10. Because of the medication stock monitoring by the Pyxis machine, there was never an emergency or immediate need to re-stock a Pyxis device.

11. The pharmacy also filled prescriptions for intravenous medications. On the weekdays, the pharmacy filled prescriptions for intravenous medications between 1:00 and 1:30 pm. On weekends, intravenous prescriptions were filled between 10:30 am and 11:00 am. In the time between the stocking of Pyxis devices and the preparation of intravenous medications, the Pharmacy Technicians on duty were free to complete paperwork as needed. I also allowed the Pharmacy Technicians to take paid work breaks and unpaid lunch breaks after 8:30 am and before 1:00 pm.

12. Jessica Bennett was interested in emergency medicine and regularly would leave the pharmacy between Pyxis loading and IV preparation to go to the Emergency Department when patients were brought in. I allowed Jessica to do this so she could decide if she wanted to pursue a career in emergency medicine. However, her visits to the Emergency Department became too frequent and I cautioned her that it could be perceived that she was performing work in the Emergency Department without proper licensing. I also told her there were HIPAA concerns raised by her frequent presence in the Emergency Department.

13. In addition to managing the L.V. Stabler pharmacy, my business operated a remote order pharmacy business in the evenings and at night. I hired Jessica to enter computer orders from prescriptions faxed in by physicians when she was able. Jessica reviewed and placed computer orders during her work shifts in Registration and Admissions, presumably during her paid and unpaid breaks, using the hospital's internet connection to do so. Jessica's computer order work was not for the benefit of L.V. Stabler and my company paid Jessica for her services in placing computer orders apart from whatever compensation L.V. Stabler paid her for working in the Registration and Admissions department.

14. I have given this affidavit solely for the exclusive purpose of its use by L.V. Stabler and Community Health Systems Professional Services Corporation as a submission to the court in response to a lawsuit filed by Donna Ohsann.

Further the affiant says not.

_____
Matthew Colley

Sworn and subscribed before me,
this the 28 day of March, 2008.

_____
Notary Public
My commission expires: 8-7-08