IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONNA OHSANN,

    PLAINTIFF,

V.
                                                    CIVIL ACTION NO.:
                                                    2:07-cv-00875-WKW

L. V. STABLER HOSPITAL and
COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,

    DEFENDANTS.

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION

COME NOW the Plaintiffs, by and through their attorneys of record, and respond to Defendant's Opposition.

I.    INTRODUCTION

Defendant has written a lengthy opposition (necessitating the length of this brief) to Plaintiffs' Motion to Conditionally Certify a class of hourly paid, non-exempt employees working at one location who filed this case to address Defendant's violations of the Fair Labor Standards Act.  While the point of conditional certification is merely to give notice to current and former affected employees of the facility for a three year period, Defendant had filed a brief in

1

support of summary judgment. Defendant's Opposition is based on its perception of deficiencies in Plaintiffs' declarations submitted in support of the motion, and Defendant's arguments regarding its version of the facts of the case. Defendant places all of its eggs in the basket of a non-controlling district court decision out of Georgia, that despite Defendant's claim that is "on all fours" with the matter before this Court, it is anything but.

While the undersigned believes it is largely unnecessary to offer further evidentiary support for Plaintiffs' Motion, to err on the side of caution, amended declarations have been submitted simultaneously in further evidentiary support of Plaintiffs' motion.

II.    ARGUMENT

Defendant has raised ten points/issues in its Opposition.    They are as follows:

(**A**) Plaintiff's declarations are deficient (D Brief, p. 20-22, 27); (**B**)There are substantial factual disputes, and none of Plaintiffs' allegations could be true (D Brief, p. 4-15); (**C**) Employees have the responsibility to ensure the accuracy of Defendant's records and not management of Defendant (D Brief, p. 7, 18; Factual Averments 4, 5); (**D**) Plaintiff doesn't need any discovery in this case because the company has provided its policies and time records (D Brief, p. 17, 18); (**E**) A

district court case in Georgia, *(Ledbetter)*[1] dictates how this Court should rule on the motion before it (D Brief, p. 22-27); (**F**) Plaintiff should be limited to Defendant's one location (D Brief, p. 18, 19); (**G**) Plaintiffs worked in different departments and for different managers (D Brief, p. 27); (**H**) Defendant gets a credit for paid meal breaks against FLSA violations surrounding unpaid lunches (D Brief, p. 28); (**I**) If notice is issued it should be for two years not three (D Brief, p. 29-30); and, (**J**) The scope of Plaintiffs' notice is too broad; extends for too long a period of time; and, is misleading (D Brief, p. 30-31). Each point is addressed below. Defendant has not challenged Plaintiffs' showing that others desire to opt into this action, so that Plaintiffs have met that portion of their burden *(Dybach v. Fla. Dept. of Corr*, 942 F.2d 1562, 1567 (11th Cir. 1991).

      *A.*    *Plaintiff's Declarations are not deficient.*

Defendant claims that Plaintiff, and those who have opted in and filed declarations, have failed to adequately allege that as a result of Defendant's unwritten practice and policy of automatically deducting thirty minutes for a meal break that they were denied "overtime," as opposed to simply being denied pay. It appears to the undersigned that Defendant is arguing over semantics, as each declarant clearly testifies to not being paid when having to work through all or part

---

[1]*Ledbetter v. Pruitt Corp*, 2007 WL 496451 (N.D. Ga., 2007)

of lunch periods for the benefit of Defendant (Exhibits 1-5, ¶¶ 7, 8) . Most testify
to not being paid overtime at the rate of 1.5 times their regular hourly rate for pay
for all hours worked in excess of forty in a work week (Exhibits 1, 3, 4, ¶ 9). To
somehow argue about a deficiency in these declarations that refer to not being paid
for all time worked in excess of forty in a work week at the required rate merely
because the declarants don't say they regularly worked over forty hours in a work
week is "much ado about nothing."

Regardless, Plaintiffs have submitted amended declarations to address the
semantic issue raised by Defendant. Also, it should be noted that while Defendant
submitted over 100 pages of documents from its records in its evidentiary
submissions, and even referred to the fact that it has produced time records to
counsel for Plaintiffs, it elected not to provide those time records as part of its
evidentiary submissions to prove that Plaintiffs did not regularly work over forty
hours in a work week. Certainly, if Defendant had proof that Plaintiffs did not
have a FLSA claim by showing that they did not regularly work over forty hours in
a work week, it would have produced such records. Plaintiffs have such records
available to file if the Court desires.

Plaintiffs assert that even without the amended declarations, ample evidence
has previously been submitted to this Court showing that Plaintiffs' claims are

similar, and that they worked through lunch yet were not paid for all hours worked in excess of forty in a work week at 1.5 times their regular hourly rate. Some worked off the clock pre and post shift, whether referred to as "off the clock" work in their declarations or not. That is the effect of providing work for the benefit of Defendant when not paid for it. Defendant's claim that "there is no evidence that these challenged payroll practices resulted in violations of the Fair Labor Standards Act" (D Brief, p. 4), is simply in error. Declarations submitted by Plaintiffs say: "I was paid for some of this overtime at the rate of 1.5 times my regular hourly rate for hours worked in excess of forty in a work week, but not for all hours worked" (Exhibits 1, 3, 4 ¶9).

Less evidence is required at this stage of the proceeding in regards to Plaintiffs' allegations of FLSA violations. Certainly, Plaintiffs' complaint contains those allegations (see ¶¶ 14-19). In *Barron v. Henry County School System,* 242 F.Supp.2d, 1096, 1098 (N.D. Al. 2003), Judge Albritton certified the class based on plaintiff's claim of defendant "knowingly and purposefully failing to pay overtime wages for all time worked in excess of forty hours as is required by the FLSA. The plaintiffs do not point to or provide evidence of any particular employment practice leading to these alleged violations." He went on to state that "similarly situated" is met when a discrete group of employees sufficiently

provides evidence of a pattern of FLSA violations (*Id* at 1104) (see also *Damassia*, 2006 U.S. Dist. LEXIS 73090 [*9] (S.D. N.Y. Oct. 5, 2006) "...similarly situated based simply on plaintiffs 'substantial allegations' that they and potential plaintiffs were common victim of a FLSA violation,... particularly...reflect a company wide policy."

   B.    *Factual disputes are reserved for the second tier analysis.*

   In *Pendlebury, et al v. Starbucks Coffee Company*, 2005 U.S. Dist. LEXIS 574 [*10] (S.D. Fla. 2005), the court stated:

> See *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004) ("The court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual [*11] to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class"); *Goldman v. Radioshack Corp.*, 2003 U.S. Dist. LEXIS 7611, No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) ("A fact specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.*, 130 F.Supp. 2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). (See also *Scott v. Heartland Home Finance, Inc.*, 2006 U.S. Dist. LEXIS 28839 [#11-13] (N.D. Ga. 5/3/06); *Denassia, et al v. Duane Reade, Inc.*, 2006 U.S. Dist LEXIS 73090 (S.D.N.Y.

10/4/06); *Mooney v. Aramco Services Co.*, 154 F.3d 1207, 1213-14 (5th Cir. 1995).

It takes but a brief reading of Defendant's factual averments to see the extent of the factual disputes between the parties, as well as the fact that *Pendlebury* is right on point with Defendant's brief in the action before this Court. Defendant has done nothing more than argue the second phase, decertification portion of the case, not the first stage. Defendant's misplaced reliance on *Ledbetter* is indicative of its incorrect analysis for the notice phase. As noted in *Kreher v. City of Atlanta*, 2006 U.S. Dist. LEXIS 23094, *16 (S.D. Ga. March 20, 2006), "the focus of this [class certification] inquiry, however, is not on whether there has been an actual violation of the law, but rather whether the proposed Plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.

Discovery is not necessary prior to a determination on the issue of conditional class certification (*Mooney*, 54 F.3d 1213). In *Carmody v. Florida Center for Recovery, Inc.*, 2006 U.S. Dist. LEXIS 81640, *11 (S.D. Fl. 2006) the Court stated: "Defendant would have this Court indulge in a fact-finding determination on the merits of whether the alleged payment practices took place and whether the putative plaintiffs conclusively are similarly situated. Neither of these determinations are proper at this point in time; the Plaintiff's complaint,

7

motion, and supporting affidavits all allege facts sufficient to satisfy the Court's inquiry at this early stage of the litigation" (*Leuthold v. Destination America*, 224 F.R.D. 462, 468 (N.D. Cal. 2004); *Goldman v. Radio Shack Corp,* 2003 U.S. Dist. LEXIS 7611 x8 (E.D. Pa., April 16, 2003) ("A fact specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant"); *Felix DeAsencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D. Pa. 2001); *Harrison v. Enterprise Rent-a-car*, 1998 U.S. Dist. LEXIS 13131*13 (M.D. Fla. 1998)*; Schwed v. General Electric Company*, 159 F.R.D. 373, 375 (M.D. NY 1995) ("even where later discovery proves the putative class members to be dissimilarly situated notice...prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]"); *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988 *2 (S.D. NY 1993); *Severtson v. Phillips Beverage Company*, 141 F.R.D. 276, 279 (D. Minn. 1992); *Camper v. Home Quality Mgmt, Inc.*, 2000 F.R.D. 516, 520 (D. N.D. 2000).

Defendant speaks to its written policy of which it claims its employee should be aware. Defendant, backhandedly, mentions that its payroll software program, Kronos, automatically deducts thirty minutes from the time reported for an unpaid meal break (D Brief, p. 7). It is undisputed that this policy has never been communicated to employees in writing. Why not? Defendant gives employees a

handbook of policies, and its HR Department maintains an inch thick set of policies, none of which mention this automatic deduction. The point of such a policy from an employer's point of view is obvious. It is insured of cutting recorded time worked throughout its work force by at least a half hour per day. Looking carefully at Defendant's written meal policy is revealing. That policy is set forth on page 6 of Defendant's brief. That policy states "the meal period will be unpaid only when the employee is completely off duty." While saying this, Defendant automatically takes thirty minutes every day without any effort to ensure that employees truly are "off duty." The only exception for the unpaid deduction is set forth in the next sentence "employees who remain on duty <u>at their</u> <u>work stations</u> during their thirty minute meal period must be paid for the time worked." (emphasis added) Despite the requirements of 29 C.F.R. § 785.19 that require employees be fully relieved of their work station **and their work duties,** Defendant's policy only provides for payment if somebody stays at their work stations, ignoring the other requirement of this federal regulation.

In the Eleventh Circuit, the case that addresses 29 C.F.R. § 785.19 is *Kohlheim v. Glynn County Georgia*, 915 F.2d 1473, 1477 (11th Cir. 1990). The Court held that § 785.19 provides that bona fide meal periods are not work time <u>if</u>

the regulation is followed. In order to be considered a bona fide meal period, the

regulations require complete relief from duty:

> The employee is not relieved if he is required to perform any duties,
> whether active or inactive, while eating. Thus, the essential
> consideration in determining whether a meal period is a bona fide
> meal period or a compensable rest period is whether the employees
> are in fact relieved from work for the purpose of eating a regularly
> scheduled meal... The regulation set forth in § 785.19(a) offers a
> useful and fair standard by which to determine whether a meal period
> should be considered work time under the FLSA, ...

Judge Hopkins recently addressed this case, and § 785.19 in the case of

*Chao v. Tyson Foods, Inc.* (2:02-cv-1174-VEH) (N.D. Ala. January 22, 2008). She

noted that under *Kohlheim* that in order for an employer to satisfy § 785.19 "the

employer must establish that an employee is 'completely relieved from duty'" (p.

7). She went on to note that the Eleventh Circuit still applies the standard that an

employee must be completely relieved from duty under § 785.19 (n4, p. 8) (See

also *Hoffman v. St. Joseph's Hospital of Atlanta, Inc.*, 1998 U.S. Dist. LEXIS 7911

(N.D. Ga. 1998) – plaintiff's motion for summary judgment granted on their §

785.19 claim as they were required to respond to emergency pages during the meal

period, and not fully relieved of their responsibilities.)

Similarly, nurses, ER techs, CNA's, all have patient responsibilities that take

precedence over their getting a full thirty minute lunch break. Patient needs are not

predictable. Each Plaintiff has testified to the fact that they rarely received a full

thirty minute lunch break because of these patient needs. Instead of selfishly refusing the patient needs and insisting on their full thirty minute lunch break, each Plaintiff put the patient needs first. While Plaintiffs were willing to do this according to Defendant's policies they are subject to discipline if they do not. Defendant's policies (PX14) state that an employee is subject to discipline for patient neglect (B. 7-7.0); not having overtime approved in advance (D. 5-8.0); breaks must be approved in advance, and "must not result in an interruption of patient services" (D. 13-4.0).

In other words if an employee does not interrupt their unpaid lunch to tend to the needs of a patient, they can be subject to discipline. If the employee does interrupt or miss lunch, he/she has to fill out a form, track down a supervisor and review payroll records to insure that the five minute, ten minute, fifteen minute or thirty minute interruption of their lunch period for patient needs was recorded. They don't get paid for the work they performed for the benefit of Defendant if any step is omitted. Of course, this conflicts with Defendant's policy on pre-approval. If they take the meal break, ignoring patient needs, they are subject to discipline.

C.    *Defendant cannot shift its responsibility under the law to Plaintiffs*

In Defendant's policy 5.1, Defendant shifts the obligation of accurate record

11

keeping from itself (29 C.F.R. § 516) to its non-exempt employees by making it incumbent on an employee to fill out a form; get their supervisor's approval; review payroll and time details in order to be paid for time they worked for Defendant. This obligation shifts to employees the legal requirements mandated by law for Defendant.

Defendant attempts to abrogate its responsibilities under 29 U.S.C. § 785.11 and § 785.13, to the employee is also a violation of regulations. Section 785.11 states as follows:

> Work not requested, but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a piece worker. He may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe he is continuing to work and the time is working time.

29 C.F.R. §785.13 states:

> In all such cases it is the duty of management to exercise its control and see that work is not performed if it does not want it to be performed. It cannot sit back and accept benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

Defendant's reliance on its written rules, and its unwritten thirty minute lunch policy is misplaced. It attempts to ignore the requirements of the law and federal regulations to argue that in this case current and former employees should not even

receive notice about the effect Defendant's violations of the FLSA have had against each of them.

### D.    Defendant may not need discovery in this case, but Plaintiffs do

The policy/practice violation of Defendant's methodology for automatically deducting thirty minutes for a meal break, without insuring that employees are fully relieved of their work duties and responsibilities is detailed above. Defendant counters this by relying, not heavily, but exclusively on a non-controlling district court decision out of Georgia, *Ledbetter*, 2007 W.L. 496451, bolding claiming that "there is no need for Plaintiff to conduct discovery into the payroll policies and practices of L.V. Stabler, (D Brief, p. 17) and that the *Ledbetter* case is "on all fours with the facts of this case" (D Brief, p. 22). Counsel for Defendant can speak for himself regarding his lack of need of any discovery, but his dismissively proclaiming that Plaintiffs don't need discovery does not make this case "on all fours" with *Ledbetter*.

Even in *Ledbetter*, the plaintiffs had an opportunity to conduct discovery, in this case Plaintiffs have not. In selectively quoting *Ledbetter*, Defendant fails to include the following:

> In her motion for certification, Ledbetter moves this Court for a conditional certification pursuant to the first stage under *Hipp*'s fairly lenient standard. **This case, however, is in a different procedural posture than that envisioned by *Hipp*, and therefore a more searching standard of review**

**is appropriate.** *Ledbetter* filed her motion for certification two weeks after the discovery period in this case had expired. The rational for the 'fairly lenient standard' is that at the earliest stages of litigation, plaintiffs have not had time to conduct discovery and marshall the best evidence (*Davis v. Charoen Bokephand, USA, Inc*, 303 F.Supp.2d 1272, 1276 (N.D. Ala. 2004)) citing *Hipp*, 252 F.3d at 1218. This rational disappears, however, once a plaintiff has had an opportunity to conduct discovery with respect to a defendant's policies and procedures (*Id*) (citations omitted). Here, the parties have completed discovery. The Court, therefore, finds it inappropriate to conditionally certify this case pursuant to the first stage of *Hipp*. Instead, the Court will make a determinative decision as to whether this case is appropriate for a collective action using the more rigorous standard akin to that called for in *Hipp* in the second stage, when discovery is complete and the matter is ready for trial (*2) (emphasis added).

Needless to say, the above omission is critical as to whether or not this Court is asked to follow the controlling law of *Hipp* or the non-controlling law of an out-of-state, sister district court judge, who is ruling post discovery. While the undersigned expects to see Defendant argue this case again at the second stage (decertification), months from now, that is the appropriate time, not now. The district court in *Ledbetter* had before it Plaintiffs' argument of the thirty minute lunch deduction being a "per se" violation of the FLSA (*Id* *4). Plaintiffs claim in this case is not that § 785.19 creates a per se violation, but that Defendant violates the FLSA by failing to comply with the terms of that regulation, as well as other regulations and case law, by suffering and permitting Plaintiffs, and those whom they seek to represent to work for the benefit of Defendant pre shift, during lunch and/or post shift without overtime pay by undercounting hours worked.

14

Defendant spends much of its brief arguing factual differences with Plaintiffs' declarations (Def Factual Averments 7-25). After arguing these factual differences, Defendant says Plaintiffs do not need to do any discovery because it has provided its policies and the time records. Plaintiffs have submitted declarations from the Plaintiff, and each opt-in, that challenge these declarations of Defendant, and state a plausible cause of class wide violations of the FLSA and the regulations in regards to its "off the clock" work pre and post shift, and during lunch. Certainly, Defendant's own factual averments, differing from those of Plaintiffs, beg for discovery. The parties have not taken any depositions; no interrogatories have been exchanged; minimal production has been provided by Defendant to the undersigned. In no meaning of the word have the parties engaged in "discovery." Fed.R.Civ.P. 26-35 have not been followed. To boldly claim that this case is in the same posture as *Ledbetter*, which was **two weeks post discovery cutoff** is ridiculous. In his misplaced reliance on *Ledbetter*, counsel misses that critical, crucial difference with this Court. After discovery, the court in *Ledbetter* ruled on decertification, not notice. It is at that juncture that factual distinctions regarding similarity of Plaintiffs may be reviewed again after Plaintiffs have had a fair chance to conduct discovery.

In order to avoid redundancy, Plaintiffs will not recite all of the **controlling** Eleventh Circuit case law regarding the proper analysis of Plaintiffs' motion. This is the notice stage. It is the first step in the process of this case. The first step is "considerably less stringent than the proof required pursuant to Fed.R.Civ.P. 20(a) for joinder or Fed.R.Civ.P. 23 for class certification (*Grayson v. Kmart*, 79 F.3d 1086, 1096 (11th Cir. 1996). The standard is lenient (*Hipp*, 252 F.3d @ 1218). This is because "the court has minimal evidence" (*Id.*). Typically, the decision regarding conditional certification is typically made early in the litigation **before full discovery has been completed** (*Id*).    Plaintiffs bear the burden of demonstrating a reasonable basis for their claim of class wide discrimination. The Plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class wide discrimination, that is detailed allegations supported by affidavits which successfully engage Defendant's affidavits to the contrary" (*Hipp* at 1219 quoting *Grayson*, 79 F.3d at 1095).

E.    *Ledbetter is non-controlling and inapplicable*

As opposed to the inapplicability of *Ledbetter*, Plaintiffs point to the following comprehensive, detailed analysis of the same issues dealing with § 785.19 which was addressed in a Florida case, where summary judgment was granted for the plaintiffs on the same claims before this Court, *Ealy-Simon, et al v.*

*Liberty Medical Supply, Inc.*, 2007 U.S. Dist. LEXIS 37518 (May 23, 2007)(Exhibit "A"). In that case, the court conditionally certified the class with nearly 300 current and former hourly paid employees opting in. The plaintiffs worked in various departments and divisions with a variety of supervisors, "however, the defendants all used a common payroll system and shared common personnel policies, which Liberty Medical Supply, Inc. administered..." (*7, 8). As noted by the court "the plaintiffs complained that two of the defendants' payroll practices wrongfully reduced their overtime compensation, thereby violating the FLSA. The first disputed practice was the "lunch break rule," whereby the timekeeping system forced automatic deductions for break times. The system automatically deducted a thirty minute break, regardless of how long employees actually took the lunch or whether they took one at all. The system automatically extended non-meal breaks to thirty minutes if those breaks lasted between 16-29 minutes in duration." (*Id* hn 7, 8). The court found that the defendant willfully violated the FLSA in regards to its practices.

In the Magistrate's Report and Recommendation (Exhibit "B" to this Brief), the magistrate judge detailed that the defendant's defense to the automatic thirty minute deduction was one of waiver, since employees could request a system

17

override (p. 10). The magistrate judge then went on to say the following, which is quoted at length due to its appropriateness to the matter before this Court:

> The premise of this defense is that the end result after processing the automatic deductions <u>and any override requests</u> is the most accurate time record. The Defendants then take a different approach and question the reliability of the underlying punch log itself. They allege employees would eat their lunch at their desks so that the biometric system would not punch them out for the break. The Defendants thereby seek to create a dispute of fact over whether the Plaintiffs were actually working when they were still on the clock. This defense runs contrary to FLSA law in several respects. To the extent it implies the overtime work was unauthorized, the Plaintiffs still are not precluded from raising their claims. Simply put, and to summarize the relevant portions of the FLSA, if the Defendant benefitted from the Plaintiffs' labor, then the Defendant should compensate them accordingly. 29 C.F.R. § 785.11 makes clear that "work not requested but suffered or permitted is work time." Thus, if an employee voluntarily works through an otherwise unpaid break or stays late to finish a task, the time is compensable. The same legal result occurs if the employees ate at their desks while continuing with their work so long as the meal period was spent predominantly for the employer's benefit. <u>See Avery v. City of Talladega, Ala.</u>, 24 F.3d 1337, 1347 (11th Cir. 1994).
>
> To the extent the Defendants imply that the Plaintiffs went completely idle without punching out for their meal break, they fail to raise sufficient evidence to defeat summary judgment. Rule 56 clearly obligates parties to make a substantive showing in opposing a motion for summary judgment. Here, however, the Defendants point to only anecdotal commentary from nine Plaintiffs' depositions that at times employees did not clock out for lunch. Even assuming that on these occasions the employees were truly idle (an entirely unsubstantiated predicate), the Defendants make no showing of this practice's frequency or pervasiveness. Without some sort of detail, context, or corroboration, the contention remains conclusory and even contradictory to other parts of their defense. One such contradictory point is the admittedly precise nature of a biometric punch system.

The defense prompts point of inquiry into whose burden it is to keep accurate time records. The FLSA lays this responsibility clearly with the Defendants as the employer and regards the employer's punch clock records as the best evidence of time worked. See Colindres v. Quietflex Mfg., 427 F.Supp.2d 737 (S.D. Tex. 2006) (finding the actual punch time shown in the defendants' time records better accounts for work time than the scheduled shift time by which the employees were paid does). The Defendants however do little to overcome the presumption that the actual punch logs are inaccurate. Additionally the Defendants carry a concomitant obligation to ensure that their employees are actually working while on the clock. Cf. Reich v. Dept. of Conservation & Natural Res., 28 F.3d 1076, 1083 (11th Cir. 1994). Even if this Court were to find some degree of inaccuracy in the actual punch logs, the Defendants still would have "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence", Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), a burden of proof which the Defendants do not meet.

It does not appear that the Plaintiffs are seeking to declare the lunch break rule a per se violation of the FLSA. If they had, this Court could not concur since ordinarily meal periods are not compensable, see 29 C.F.R. § 785.19, and since the Plaintiffs were accorded an override option. Whether the lunch break rule is, itself, violative of the FLSA is not the dispositive issue, however. What is relevant is the effect of the lunch break rule and whether the lunch break rule, as applied, undercounted the Plaintiffs' overtime hours. See, e.g., Enright v. CGH Med. Ctr., 1999 WL 24683 (N.D. Ill. 1999) and Metzler v. Hickey's Carting, Inc., 1997 WL 570937 (E.E.N.Y. 1997). For reasons explained above, this Court finds as a matter of law that the practice did undercount overtime hours in violation of the FLSA. In footnote 6 of their Response the Defendants raise the additional argument that "many or possibly most of the 'lunch break' claims are not FLSA claims at all." FLSA law is such that an employee can seek minimum wage or overtime compensation only (and hence no straight or "gap" time). Since many weeks Plaintiffs worked no overtime at all, the Defendants reason that this undermines their ability to pursue their FLSA claims, especially on a collective basis. This argument is unavailing however since it ignores the system-wide nature of the timekeeping deficiency and the many other weeks in which the Plaintiffs did incur uncompensated overtime hours. Compare

Green v. Dallas County Sch., 2005 WL 1630032 (N.D. Tex. 2005) (holding that because Green never worked more than forty hours in a week, her employer could not possibly have violated Section 207).[2]

Plaintiff has attached as Exhibit "C" to this brief, the complaint in *Cowan, et al v. Talladega Healthcare Center, Inc.,* (CV-06-BE-0910-E). Exhibit "D" is the Order from Judge Bowdre granting Conditional Class Certification on that case. Defendant attempts to rely on the non-controlling case of *Ledbetter* from Georgia. The *Cowan* case is equally non-binding, but arises from the Northern District of Alabama, and concerns the identical issues raised in the matter before this Court; Conditional Certification was granted **pre-discovery.** Arguments raised by the defendant in that case, which are similar to those raised by the Defendant here, were rejected by the Court. Exhibit "E" is a typical declaration submitted by Plaintiff in support of Conditional Certification in the *Cowan* case. Defendant cannot advance any legitimate argument to show that Judge Bowdre's reasoned analysis should be disregarded.

---

[2]See also *Beasley v. Hillcrest Medical Center,* 2003 U.S. App. LEXIS 20783 (10th Cir. 2003) - nurses and technicians of the medical center were conditionally certified for interrupted meals; *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004) - conditional certification of the class finding plaintiff and opt-ins similarly situated based on the pattern of not paying its employees overtime; *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2nd Cir. 1997)- affirming judgment for the plaintiff for overtime violations under § 785.19; *Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998) - affirming jury verdict for the plaintiffs for defendant's overtime violations by refusing to compensate plaintiffs for a thirty minute meal break.

F.    *The case is and always has been confined to the one location of L.V.*

*Stabler Hospital*

There has never been a disagreement about this.  Plaintiff has always limited

the case to this named Defendant at this work location (Docket Entry 1, Plaintiff's

complaint, p. 18; Plaintiff's Brief).

G.    *Different jobs and supervisors are irrelevant for this case and motion*

> "... it is not appropriate for the court to address the merits of plaintiffs'
> claims or weigh the evidence.  Accordingly, variations in specific
> duties, job locations, working hours, or the availability of various
> defenses are examples of factual issues that are not considered at this
> stage (*Scott*, 2006 U.S. Dist. LEXIS 28839 *12; *Pendlebury*, 2005
> U.S. Dist. LEXIS 574 *3; *Moss v. Crawford & Company*, 2001 F.R.D.
> 398, 410 (W.D. Pa. 2000); *Kreher*, 2006 U.S. Dist. LEXIS 23094 *4;
> *Clark v. Convergys Customer Mgmt Group, Inc.*, 370 F.Supp.2d 601,
> 607 (S.D. Tex. 2005); *Reab v. Electronics Art, Inc.*, 214 F.R.D. 623,
> 627 (D. Colo. 2002).

Defendant mentions this in passing, so the undersigned will as well.  The

key is whether Plaintiffs are similarly situated, and the fact they may have different

job classifications of supervisors is irrelevent where Plaintiffs' primary claim is

Defendant's violation of 29 U.S.C. § 785.19 by failing to pay Plaintiffs, and

proposed members of the class, for all hours worked through lunch for the benefit

of Defendant.  Since that is a common policy and practice, without dispute, applied

to all hourly, non-exempt employees of this facility, any claim for this Court to

21

deny notice on this basis would be frivilous. That is merely another factual dispute that would have to be addressed at stage two.

H.    *Defendant does not get a credit for paid breaks*

On page 28 of Defendant's brief is contained a paragraph regarding an employer receiving credit for paid meal breaks that is simply wrong under the law. The proposition advanced by Defendant, in citing *Avery v. City of Talladega*, 24 F.3d 1357 (11th Cir. 1994), for offsetting paid meal breaks, only applies to policeman (*Kohlheim v. Glenn County, GA*, 915 F.2d. 1473, 1476 (11th Cir. 1990); *Chao v. Tyson*, n.4,, p. 9. Defendant, as a private employer, is not entitled to any such offset. See also 29 C.F.R. § 785.18:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (*Mitchell v. Greinetz*, 235 F.2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard v. Consolidated Steel Corp., Ltd.,*, 61 F.Supp. 996 (S.D. Cal. 1945)).

I.    *Defendant has no support for its claim that the notice period should be two years versus three.*

Defendant seeks to argue its defenses as a basis for not sending notice to every employee of Defendant during the last three years. Notice simply informs them of their opportunity to join this lawsuit. While Plaintiff set forth seven

22

Alabama district court decisions to the contrary (holding three years was the appropriate notice period versus two).    Defendant cited no case authority whatsoever.

  *J. Plaintiffs' Notice is on point and consistent with notices issued in other, virtually identical cases*

  In response to Plaintiffs' proposed Notice, Defendant has said it is too broad because of who it would be sent to; and extends for too long a period of time (two years versus three years), and in some unknown way is "misleading" (D Brief, p. 30-31).  Plaintiffs have sought conditional certification for all hourly paid persons who worked over forty hours in one or more work weeks from October 1, 2004 to the present.    Since Plaintiffs allege violation by Defendant of regulatory requirements under 29 C.F.R. § 785.19 in regards to undercounting Plaintiffs' hours because of lunch deductions and for suffering and permitting Plaintiffs and similarly situated employees to work off the clock pre and post shift, there is nothing overly broad about the requested Notice. It is limited to one location. It is limited to non-exempt employees. It is limited to those who worked overtime in at least one or more weeks during the subject period of the case.  It is limited to individuals who were subject to the common unwritten policy of Defendant of an automatic lunch deduction without ensuring the employees were fully relieved of

their job duties and work station. It is limited to those individuals who may have been interrupted during all or part of their lunch on one or more occasions during a week in which they worked over forty hours, and yet were not paid at 1.5 times their regular hourly rate for such deducted hours. It is limited to those who may have performed work pre and post shift "off the clock" with knowledge of management of Defendant. As such, it is consistent with Plaintiffs' claims, and limited to those individuals who would be similarly situated. That is the criteria for this Notice as set forth by the Eleventh Circuit *Id, Hipp*. To provide notice to anything less would not be consistent with the cited authority in Plaintiffs' principal brief, as well as this Reply Brief. Defendant does not indicate that the number of individuals to whom such Notice would be sent would be too large in number or otherwise too difficult on that basis. Since undercutting of hours is the basic claim of Plaintiffs in this case, each person to whom Notice would be sent would be in the payroll system of Defendant. Each would have received a W-2 during one or more years made the subject of this lawsuit. Each would be easily identifiable with a, supposed, computerized record from which a mailing list could easily be obtained.

Defendant's objections regarding the length of time encompassed in the lawsuit, and therefore the number of people who may be affected between the two

24

and three year time frame has been addressed above. Defendant fails to identify specifics regarding any claim of "misleading" aspect to the Notice. Judge Bowdre issued a similar Notice in *Cowan v. Talladega Healthcare* (CV-06-BE-0910-E). Judge Johnson has approved a very similar notices in the cases of *Anderson, et al v. Cinram* (CV-06-J-1108-NE) and *Bates, et al v. MPW Industrial Services, Inc.* (CV-07-J-1441-NE).    Judge Coogler approved a similar notice in the case of *Harris, et al v. Glasforms* (2:06-cv-00402-LSC). Defendant's objection in regards to the Notice itself are not legally sufficient.

III.    CONCLUSION

For all the above reasons, Plaintiffs' Motion for Conditional Class Certification is due to be granted.

Respectfully submitted,

/s/ David R. Arendall

David R. Arendall
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue
Birmingham, AL 35203
205.252.1550 - Office
205.252.1556 – Facsimile

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2008, I filed a copy of the foregoing using the Court's CM/ECF system which will send a copy of the foregoing pleading to counsel for the Defendant:

David Walston, Esq.

/s/ David R. Arendall

_____

Of Counsel

# EXHIBIT A

# TO PLAINTIFFS'

# REPLY TO DEFENDANT'S

# OPPOSITION TO PLAINTIFFS'

# MOTION FOR CONDITIONAL

# CLASS CERTIFICATION

Source: 11th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined 🔲
Terms: flsa and overtime and exemption

☩Select for FOCUS™ or Delivery
▢

*2007 U.S. Dist. LEXIS 37518, \**

CATHERINE EALY-SIMON on behalf of herself and all others similarly situated, Plaintiffs, v.
LIBERTY MEDICAL SUPPLY, INC., et al., Defendants.

Case No. 05-14059-CIV-MOORE/LYNCH

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

2007 U.S. Dist. LEXIS 37518

May 23, 2007, Decided
May 23, 2007, Entered

**CORE TERMS:** disputed, spiff, minimum wage, flat-fee, per-item, flat rate, one-half, straight
time, lunch-break, unpaid, exempt, regular rate, years prior, lunch break, state law claim,
hours worked, hourly rate, exemption, retail, calculation, opt-in, notice, opting, overtime,
memorandum, salespeople, selling, flat, common enterprise, automatically

**COUNSEL: [\*1]** For Catherine Ealy-Simon, on behalf of herself and all others similiary
situated, George Bond, Bryan Brukwicki, Patrice Davis-Johnson, Andy Gill, Gina Lavigne,
Nanette Naylor, Timothy Rule, Donna Russell, All Plaintiffs, David D. Wright, Sally Hopkins,
Ashley Ghiggia, Hope Johnson, Sharonda Blake, Sandra Cannamela, Pedro Perez, Michelle
Mullins, Temisha Scott, Deborah Tate, Geraldine Strocko, Lashonda T. Fletcher, Toran K. Jones,
Claire Diaz, Kristine Sheppard, Ruben Mitchell, Cristina Parker, Juan E. Diaz, William A. Vigani,
Eric Keeler, Debbie J. Richards, Ronald Tancredi, Debra Ann Tancredi, Maryann Garthwaite,
Michelle R. Coble, Charles Flagg, Debra Davis, Tiwana Lightbrown, Anthony A. Powell, Mirtha
Bernadin, Sharyn Shevins, Elizabeth Hurd, Marilena Lopresti, Charmaine M. Clement, Tequila
Smith, Tracey Mimms, Janine Kowalski, Tinya Clements, Dravious Lavon Burch, Brian L.
Chandler, Jessica Anderson, Michael J. Krupa, Terence M. Weber, Judy Albritton, Melody V.
Harkness, Jean A. Brennan, Shameka L. Edwards, Laura N. Elder, Tawan D. Foreman, Stutson
Gary, Ana I. Gonzalez, Philip J. Miller, Lisa M. Poland, Margie M. Smith, Laverne
Procter-Harrison, Beth Belle, Bill Jenkins, Sharon **[\*2]** Rosado, Sharon Thomas, Walter
Wagner, Plaintiffs: Beth Linda Blechman, Mark Aloysius Cullen, LEAD ATTORNEYS, Cullen Law
Firm PA, West Palm Beach, FL.

For Sally Hopkins, Plaintiff: Beth Linda Blechman, Cullen Law Firm PA, West Palm Beach, FL.

For Codi D. Fletcher, Natasha F. William Davis, Elva Williams-Wiggins, Zipporah E. Gibson Paul
Votino, Christopher Cook, Arica Moreno, Michael Dayton, Lashonda Rogers, Nellie Gagnon,
Shawn T. Piccolo, Faith Fitzpatrick, Robert E. Torrence, Lisa Frigault, John Oberle, Tanyelle
Williams, Linda Morrison-Bateman, Lynne Dianne Eitneier, Tanisha Rogers, Theresa Meservey,
Coleen Little, Emili Parker Beaudry, David M. Maharry, Aristine Smith-Maharry, Sharon
Dudley-Wilken, Gary A. Robbins, Jenifer Sneider, Cheryl Van Decker, Amie Powers, Raymond L.
Taylor, Michele York, Teresa Hardingham-Dueben, Juliette D. Newton, Barbara Lewis, Rhonda
Ansara, Denise Buderus, Ralph Caprio, Ralph B. Chilcote, Sheena Glean, Barbara Hasson,
Frances Jesselli, Gregory Stokes, Linda A. Burton, Tangelia Delancy, Antoinette Evans, Teresa A.
Jones, Christina Rogers, Beverly Mowatt, Glenda F. Griffith, Diane Hollingsworth, Janett
Msharbuno, Kimberly Shaw, Julie A. Barbee, **[\*3]** Christopher Fountain, Mario L. Hernandez,
Gail A. Hotzler, Robert A. Hotzler, Lafina J. Hudson, Starlet Y. Jacobs, Trinidad Magno, Abigail
McBee, Terella A. Montgomery, Bilda Morales, Nikki Richardson, Lee Ann Rivera, Cynthia

Sienkiewicz, Lorie Wilson, Beatrice C. Becker, Hugh C. Becker, Lynn M. Gaudreau, Allara Longshaw, Jennifer MacAllister, Mark A. McCloud, Jr., Julie McCormick, Emerson B. Moe, Jolene Murphy, Nathalie Jane Valentin, Nydia Aiken, Cherisse Cooper-Slappey, joseph Garofolo, Catherine Iannotti, Sharon Nonnemacher, Eileen Corcoran, Lee Anna Hall, Sabrina A. Hall, Patricia A. Kronenberg, Melinda Nolen, Catherine A. Parks, Tiffanie Simon, Melissa Smith, Edward Vandermark, James Zimmerman, Bonnie Zimmerman, Rosemary Ansara, Rita Boylan, Kate Cannon, Jason Chandler, Salina Charles, Diane M. Daigle, Barry Freedman, Jeffrey Galaise, James Henry Garcia, Roberta Jones, Peggy M. Kneurehl, Crystal S. Knight, Adalberto Lio, Shari Lucas, Jennifer Martin, Paula Mignone, Robert M. Smith, Lori L. Baugh, Rebecca Burch, Jacqueline Cecio, Nicole Colon, Sonia Cruz, Kellyann Depirro, Richard F. Dintzner, Richard Bengel, Jacqueline A. Glynn, Brenda Haneline, Valerie White, Michael R. Hatalursley, **[*4]** Simone T. Horne, Tanisha Henry, Patricia Johnson, Laurie A. Kunzman, Ruth N. Lasalle, Tamico D. Logan, Willie Mack, Lesa Moody, Barbara Puffenberger, Eileen P. Schmidt, Joseph Glenn Weaver, Rodney Brown, Natrice Clark, Maureen Ciola, Douglas P. Carlton, Diane J. Downs, Carolyn Frankowsk-Rooney, Paula R. Laprocina, Brandon Martabano, Kenrick H. Sterling, Christian Tucillo, Tenisha T. Washington, Emmanuel Aubin, Michelle Drinkwine, Garron Edmond, Antonio Jones, Katrina B. Williams, Michael Dayle, Simone T. Horne, Joellen Conti, Evelyn A. Pickard, Neal B. Wetterauer, Kelli Karen Isaacs, Debra Smith, Laketha Barnes, Margie V. Clacer, Jose L. Costa, David C. Duck, Desmond Edgecomb, Diane Failach, Chequita Jones, Melissa Ann Landt, Dawn McNamarra, Deanna L. Munger, Keith Pinkston, Eddie Robinson, Louis P. Rose, Lavictor Schenck, Elena M. Taylor, Cleo M. Byrnes, Joellen Conti, Danny L. Cullum, Yolanda S. Franklin, Samuel Fusco, Kelli Karen Isaacs, Evelyn A. Pickard, Maria Primm, Linda Renella, Claire L. Scott, Ashley St. Pierre, Debra Smith, Cheryl Smith, Rosemary Warren, Neal B. Wefferauer, Jessica L. Williams, Manuel Oquendo, Connie Allison, Melinda McLean, Gary J. Bombaro, Tangela Lezeau, **[*5]** Tia Singleton, Tara A. Parker, Plaintiffs: Mark Aloysius Cullen, LEAD ATTORNEY, Cullen Law Firm PA, West Palm Beach, FL.

Zipporah E. Gibson, Plaintiff, Pro se, Mansfield, TX.

For Liberty Medical Supply, Inc, Florida corporation, Stephen C. Farrell, Defendants: Haas A. Hatic, LEAD ATTORNEY, Greenspoon Marder Hirschfeld Rafkin Ross & Berger, Fort Lauderdale, FL; Jessica G. Taverna, LEAD ATTORNEY, Mintz Levin Cohn Ferris et al, Reston, VA; David Barmak, Frank T. Pimentel, Mintz Levin Cohn Ferris Glovsky & Popeo, Washington, DC.

For Warren Keith Trowbridge, Defendant: Allan James Sullivan, LEAD ATTORNEY, Baker & McKenzie, Miami, FL; Haas A. Hatic, LEAD ATTORNEY, Greenspoon Marder Hirschfeld Rafkin Ross & Berger, Fort Lauderdale, FL; William Vito Roppolo, Jr., LEAD ATTORNEY, Baker & McKenzie, Miami, FL; Frank T. Pimentel, Mintz Levin Cohn Ferris Glovsky & Popeo, Washington, DC.

For Liberty Home Pharmacy Corporation, a Delaware Corporation, Liberty Medical Supply Pharmacy, Inc., a Delaware Corporation, formerly known as Liberty Diabetes Services, Inc, Liberty Healthcare Group, Inc., a Delaware corporation, Liberty Commercial Health Services, Inc., a Delaware corporation, **[*6]** Liberty Direct Services, Corporation, a Delaware corporation, Liberty Marketplace, Inc., a Delaware corporation, Liberty Therapeutic Shoe Corporation, a Delaware corporation, Defendants: Haas A. Hatic, LEAD ATTORNEY, Greenspoon Marder Hirschfeld Rafkin Ross & Berger, Fort Lauderdale, FL.

**JUDGES:** K. MICHAEL MOORE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** K. MICHAEL MOORE

**OPINION: ORDER RESOLVING REMAINING ISSUES OF LAW AND FACT; STRIKING PLAINTIFFS' REPLY BRIEF AND MEMORANDUM OF LAW OPPOSING DEFENDANTS' RETAIL OR SERVICE ESTABLISHMENT EXEMPTION; STRIKING DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM REGARDING THEIR AFFIRMATIVE DEFENSE APPLYING THE EXEMPTION PURSUANT TO 29 U.S.C. § 207(i); CLOSING CASE**

THIS CAUSE came before the Court upon the hearing held March 6, 2007. At that hearing, the parties agreed to the extent issues of fact remain to be decided, they may be decided by the Court. The parties also agreed that three issues of law remained to be decided:

> 1) Whether Plaintiffs may recover for unpaid "straight time" wages
> 2) The precise period of damage recovery
> 3) Whether the 49 disputed Plaintiffs are exempt from **[*7]** the **FLSA**

This Court set a briefing schedule (DE # 706). Each party filed a memorandum, a response, and a reply on each issue of law (DE # 708-725). Plaintiffs' Reply Brief and Memorandum of Law Opposing Defendants' Retail or Service Establishment **Exemption** (DE # 723) and Defendants' Reply Memorandum to Plaintiffs' Response to Defendants' Memorandum Regarding their Affirmative Defense Applying the **Exemption** Pursuant to 29 U.S.C. § 207(i) (DE # 722) are 13 and 21 pages, respectively, and therefore violate Local Rule 7.1(C)(2). Accordingly, they are STRUCK.

UPON CONSIDERATION of the memoranda and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

The corporate Defendants are owned by or are subsidiaries of PolyMedica Corporation and constitute a common enterprise in the retailing of diabetes-related medicine and goods. PolyMedica, a Massachusetts corporation, operates its daughter corporations in Port St. Lucie, Florida. The Plaintiffs number nearly 300 current and former hourly-paid employees of these corporate defendants. The Plaintiffs worked in various **[*8]** departments and divisions, with a variety of different supervisors. However, the Defendants all used a common payroll system and shared common personnel policies which Liberty Medical Supply, Inc., administered until Liberty Healthcare Group, Inc., took these tasks over in 2003. The Plaintiffs complain that two of the Defendants' payroll practices wrongfully reduced their **overtime** compensation, thereby violating the **FLSA.**

The first disputed practice was the "lunch break rule," whereby the timekeeping system forced automatic deductions for break times. That is, the system automatically deducted a 30-minute break, regardless of how long employees actually took for lunch or whether they took one at all. The system also automatically extended non-meal breaks to 30 minutes if those breaks lasted between 16 and 29 minutes in duration. The automatic deductions were not absolute. There was a "checks and balances" system which allowed supervisors to override the deductions, either before the end of the pay period, or after the employees' pay stubs were issued.

The second disputed practice was the Defendants' failure to add non-discretionary incentive pay to the regular pay rate when calculating **[*9] overtime** pay.

This Court filed an Order (DE # 704) granting Summary Judgement to the Plaintiffs on the following issues:

1) The **FLSA** applies.

2) The lunch break rule, as applied, resulted in undercounting of Plaintiffs' **overtime** hours.

3) Defendants willfully violated the **FLSA,** making the applicable statute of limitations three years.

4) Plaintiffs are entitled to liquidated damages, as a matter of law.

The Court also held that the Plaintiffs' method for calculating damages was consistent with the Code of Federal Regulations, 29 C.F.R. §§ 778.110, 778.209, and 778.331, and Plaintiffs' damages could be calculated objectively using that method.

At a hearing just before beginning the trial, the parties agreed that there were three issues remaining in this case, and that those issues could be decided by the Court.

## II. THE STRAIGHT TIME WAGES CLAIM

This case was brought in federal court pursuant to the Fair Labor Standards Act. Generally, an employee cannot recover damages on a claim pursuant to the **FLSA** if his or her average wage exceeds the minimum wage for a work period in which the employee **[*10]** did not work **overtime.** Blankenship v. Thurston Motor Lines, 415 F.2d 1193, 1198 (4th Cir. 1969); United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2nd Cir. 1960). For example, if a Plaintiff worked a 40 hour week, but had three half-hours deducted for lunch periods through which she actually worked, she would have a "straight time" claim for that hour and a half's worth of pay pursuant to Florida law.

Plaintiffs claim that, although they did not articulate a specific state law claim in their Second Amended Complaint (DE # 309), they provided sufficient notice to the Defendants of a claim for unpaid straight time, and this Court may construe a valid state law claim over which to exercise supplemental jurisdiction. Pl. Resp. (DE # 717) at 1-3. Defendants argue that, because the Plaintiff never specifically pled the state law claim, to allow the claim would "deprive Defendants of their right to defend against the state law claim." Def. Rep. (DE # 721) at 3. Rule 8 of the Federal Rules of Civil Procedure, the "General Rules of Pleading," provides:

> (a) Claims for Relief. A pleading which **[*11]** sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

The liberal notice pleading requirements require only that the Defendants receive fair notice of the Plaintiffs' claims and the grounds for those claims. Lombard's, Inc. v. Prince Mfg., Inc.,

In the Second Amended Complaint, Plaintiffs refer repeatedly to claims for "unpaid wages" as well as "unpaid **overtime** wages." See Second Amended Compl. The Second Amended Complaint specifically separates a claim for "compensatory damages for lost pay for hours worked but for which no compensation was paid because of the effect of the 'lunch break rule'" from "lost **overtime** to the extent that the operation of the 'lunch break rule' deprived employees of credit for hours worked in excess of forty (40) hours per week. . . ." Id. at P 33. While it did not specify the state law grounds for the claim, Plaintiffs' cognizable claim for straight time wages is included in the Second Amended Complaint, and this Court will exercise supplemental jurisdiction over the claim **[*12]** pursuant to 28 U.S.C. § 1367.

## III. PERIOD OF DAMAGE RECOVERY

This Court has held that the applicable statute of limitations is three years for the Plaintiffs' recovery of damages for their claims brought under the **FLSA.** Order Adopting Report of Magistrate Judge (DE # 704) at 2. The parties dispute the date from which the three years should be counted (the "Operative Date"). The parties agree that for the Plaintiffs who opted in after the lunch-break rule claim was established, the Operative Date is the day that Plaintiff opted in, and for Plaintiffs who opted in before the claim was established, the Operative Date is the day the claim was established. The parties differ on when the lunch-break rule claim was established.

Defendants argue that the claim was established December 23, 2005, "after this Court granted

leave to amend and the Second Amended Complaint was actually filed with the Clerk of Court."
Def. Reply (DE # 714) at 4. Defendants claim they were not on notice of the lunch-break rule
claim until the Second Amended Complaint was filed because it added defendants not
previously named in this case, and that was when "the lunch break claim **[\*13]** was first
pending." Def. Mot. (DE # 710) at 3. Federal Rule of Civil Procedure 15(c), however, allows
amendments of a pleading to relate back to the date of the original complaint when the newly
named defendants had notice of the action and knew or should have known they would have
been named as parties to the action, but for the Plaintiffs' error. Rule 15(c). As this Court has
previously found that the corporate Defendants "constitute a common enterprise," and as the
first Amended Complaint raised the lunch-break rule claim, this Court holds that the first
Amended Complaint provided the required notice. See Report and Recommendation on
Plaintiffs' Amended Motion for Partial Summary Judgment (DE # 623).

Plaintiffs argue they are entitled to damages for the three years prior to June 3, 2005, when the
Motion for Leave to File and Amended Complaint (DE # 65) and the Amended Complaint (DE #
66), which first raised the lunch-break rule claim, were filed. Pl. Brief. (DE # 713) at 2. For the
purposes of determining the statute of limitations, an amended complaint is deemed filed not
on the date when leave is granted to amend, but on the date the **[\*14]** amended complaint is
docketed. See Pompey v. Lumpkin, 321 F.Supp.2d 1254 (M.D. Ala. 2004). The docketing of the
amended complaint provided the Defendants with notice of the new claims. Accordingly,
damages for the **FLSA** claims will be granted for the three years prior to June 3, 2005, for those
Plaintiffs opting in before that date, and each Plaintiff's opt-in date, for those opting in later.

The straight-time claims are subject to a two-year statute of limitations. McRae v. Douglas, 644
So.2d 1368, 1371 n.1 (Fla. Dist. Ct. App. 1994). Therefore, damages for the straight time
claims will be granted for the two years prior to June 3, 2005, for those Plaintiffs opting in
before that date, and each Plaintiff's opt-in date, for those opting in later.

## IV. THE 46 DISPUTED PLAINTIFFS

While the **FLSA** generally requires employees receive **overtime** compensation for time worked
beyond forty hours per week, certain employees are exempt from this requirement. See 29
U.S.C. § 207(a); 29 U.S.C. § 213. Defendants claim that 46 Plaintiffs (the "Disputed Plaintiffs")
are exempt from the **overtime** pay requirements **[\*15]** of the **FLSA** for certain quarters,
based on their "high-dollar commission-driven compensation." Def. Mem. at 3 (DE # 708). The
Disputed Plaintiffs and the quarters for which the Defendants claim they are exempt are listed
in Attachment A to the Defendants' Memorandum. Def. Mem. Ex. A at 6-13 (DE # 708-1). That
exhibit lists 51 Plaintiffs, but Defendants Harkness, Landt, Powers, Stokes, and Votino are no
longer parties to this action. Defendants bear the burden of proving a valid **exemption** under
29 U.S.C. § 213(i). See Klinedinst v. Swift Investments, Inc,. 260 F.3d 1251, 1254 (11th Cir.
2001) 29 U.S.C. § 213(i) provides:

> No employer shall be deemed to have violated subsection (a) of this section by
> employing any employee of a retail or service establishment for a workweek in
> excess of the applicable workweek specified therein, if (1) the regular rate of pay of
> such employee is in excess of one and one-half times the minimum hourly rate
> applicable to him under section 206 of this title, and (2) more than half his
> compensation for a representative period (not less than one month) represents
> commissions on goods or **[\*16]** services. In determining the proportion of
> compensation representing commissions, all earnings resulting from the application
> of a bona fide commission rate shall be deemed commissions on goods or services
> without regard to whether the computed commissions exceed the draw or
> guarantee.

Although the Plaintiffs now question Defendants' proof that they qualify as a retail or service
establishment, Plaintiffs have previously admitted as much. The Second Amended Complaint

states: "the named Defendant corporations are part of a common enterprise established for the purpose of providing medical supplies, products, and services to the public." (DE # 309) at 10. Neither party claims Defendants provide these goods and services without being paid. Accordingly, the Defendants must show that the Disputed Plaintiffs regular rate of pay was more than one and one-half the applicable minimum hourly rate, and that more than half their compensation for representative periods represent commissions on goods or services.

## A) The Disputed Plaintiffs' Regular Rate of Pay was more than One and One-Half the Applicable Minimum Hourly Rate

29 U.S.C. § 213(i) provides that, **[\*17]** to be exempt, an employee must be paid a regular rate of pay "in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title." 29 USC 206(a)(1) sets the minimum wage at "not less than $ 5.15 an hour." One and one-half times $ 5.15 is $ 7.73. Defendants argue each Disputed Plaintiffs total compensation, divided by total hours worked (including the automatically deducted lunch-break periods) results in a regular rate of pay in excess of $ 7.75 for each relevant quarter, and therefore this element is satisfied. Def. Mot. (DE # 708) at 10-11. Plaintiffs do not dispute Defendants' calculations, but argue that the applicable minimum wage is Florida's minimum wage, rather than the Federal minimum wage. Pl. Mot. (DE # 712) at 4-5; Pl. Resp. (DE # 723) at 4-5. While the **FLSA** provides that "[n]o provision of this chapter . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter," 29 U.S.C. § 218(a), section 213(i) specifically refers to the Federal minimum wage. **[\*18]** 29 U.S.C. § 213(i). Accordingly, this Court finds the Disputed Plaintiffs' regular rate of pay was more than one and one-half the applicable minimum hourly rate, and the Defendants have satisfied their burden on this issue.

## B) The Flat-fee, Per-item Incentives Are Not Commissions

Defendants show their calculations of the Disputed Plaintiffs' commissions as a percentage of their total compensation for the relevant quarters in Attachment A to the Defendants' Memorandum in Support of their Affirmative Defense Applying the **Exemption** Pursuant to 29 U.S.C. § 207(i). Def. Mem. Ex. A (DE # 708-1) at 6-13. Defendants calculated the Disputed Plaintiffs' total commissions by including incentive payments which were a percentage of their total sales, as well as flat-fee, per-item incentives they received for selling particular items. Def. Mem. (DE # 708) at 12-13. The flat-fee, per-item incentives were specific dollar amounts tied to particular items which the Defendant companies wished to sell, for example, a salesperson might receive $ 3 for each glucose meter sold. Def. Mem. (DE # 708) at 14. Defendants claim the flat-fee, per-item incentives **[\*19]** are commissions, arguing that a flat-fee, per-item incentive is no different than a commission based on a percentage of the item's value. Id. at 13-14. As support, Defendants cite Klinedinst v. Swift Investments, Inc., in which the Eleventh Circuit held an employer's "flat rate system constitutes a form of commission payment." 260 F.3d 1252, 1257 (11th Cir. 2001).

In the flat rate system at issue in Klinedinst, automobile painters were paid a flat rate for individual tasks, determined by estimating the time necessary for the task and their hourly pay rate. Id. at 1253. Regardless of how long the task actually took, the painters received the flat rate for completing the job. Id. The Eleventh Circuit found that the Klinedinst flat rate system provided "incentives for employees to work efficiently and effectively to the benefit of the employer, who may then take on more customers at a greater profit margin, and the employee, who reaps the benefits of increased flag hours regardless of the actual amount of hours worked," and, therefore, the Klinedinst flat rate system provided commissions for the purpose of § 7(i). Id. at 1256. **[\*20]**

Flat-fee, per-item payments of the type in use here are also called spiffs. See Def. Resp. (DE # 716) at 5 n.3. Spiffs may be set by a manufacturer who wants to move a particular product, for example, and offers a payment to the salesperson for selling their product rather than another. Here, the spiffs were offered by the Defendants to encourage their salespeople to push

particular products. The spiff amounts were set based on the Defendants' goals, and not related to the value of the products. See Deposition of Jonathan Starr (DE # 723-4) at 47-48. Defendants cite to Brennan v. Deel Motors, which referred to spiffs as "commissions," as support for their position. Subsequently, however, the Eleventh Circuit, *distinguished* a spiff from a commission. In Olson v. Superior Pontiac-GMC, Inc., the Eleventh Circuit remarked that the plaintiff car salesmen were paid both commissions and "daily cash bonuses called SPIFFS for selling designated cars or options," which were payable at different times. 765 F.2d 1570, 1571 (11th Cir. 1985).

Plaintiffs claim that the flat fees are not bona fide commissions. Plaintiffs first cite the Department of Labor Field Operations **[*21]** Handbook § 21h04(c) (the "Handbook") as support for this position. Def. Mot. (DE # 712) at 5. That section of the Handbook reads: "[s]ome auto service garages pay employees a flat fee to recondition used cars which are subsequently sold. Such payments which are paid without regard to the value of the service performed do not represent 'commissions on goods or services' for purposes of Sec 7(i)." Handbook § 21h04(c). Plaintiffs also rely upon United States Department of Labor Opinion Letter, **FLSA** 2005-53 (the "Letter"). Pl. Mem. (DE # 712) at 5. The Letter notes that the "whole premise behind earning a commission is that the amount of sales would increase the rate of pay" and that "[c]omissions, for purpose of Sec[tion] 7(i) usually denotes a percentage of the amount of monies paid out or received." Letter at 2 (emphasis in original). The Letter distinguishes "compensation by flat dollar amounts per lesson or session conducted for instructional employees, like aerobics instructors, and to flat fees per membership sold for the clubs' membership sales employees [from] commissions that may be a percentage of a 'club's revenue per lesson or session,' or of a 'club's revenues **[*22]** per lesson sold.'" Id.

Unlike the flag hours in Klinedinst, the spiffs at issue here are not "incentives for employees to work efficiently and effectively." 260 F.3d at 1256. Rather than efficiency, they encourage the salespeople to push particular products, and the products for which spiff is given may change from time to time. Traditional commissions, given as a percentage of the value of the product sold, encourage salespeople to greater sales for their employer. Here, the price of the item sold is largely irrelevant to the associated spiff, and this Court finds that the flat-fee, per-item incentives here are not commissions for the purposes of the **FLSA.** Defendants fail to show that the Disputed Plaintiffs' commissions, without including the non-commission, flat-fee, per-item incentives, constitute more than half their compensation.

## V. CONCLUSION

For the reasons described above, it is

ORDERED AND ADJUDGED that the Plaintiffs may recover for unpaid "straight time" wages. It is further

ORDERED AND ADJUDGED that damages for the **FLSA** claims will be granted for the three years prior to either June 3, 2005, or a Plaintiff's opt-in date, whichever is **[*23]** later. Damages for straight-time claims will be granted for two years prior to either June 3, 2005, or a Plaintiff's opt-in date, whichever is later. It is additionally

ORDERED AND ADJUDGED that the 46 Disputed Plaintiffs are not exempt from the **FLSA** and may recover for unpaid **overtime** wages. It is finally

ORDERED AND ADJUDGED that, as the only remaining issue in this case is the calculation of damages, which the parties assured this Court could be quickly and jointly accomplished upon the resolution of these final issues, the parties shall file a joint calculation of damages within ten (10) days of the date of this Order. The Clerk is instructed to CLOSE this case for administrative purposes.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of May, 2007.

# EXHIBIT B

# TO PLAINTIFFS'

# REPLY TO DEFENDANT'S

# OPPOSITION TO PLAINTIFFS'

# MOTION FOR CONDITIONAL

# CLASS CERTIFICATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-14059-CIV-MOORE/LYNCH

CATHERINE EALY-SIMON, et al., on
behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

LIBERTY MEDICAL SUPPLY, INC., LIBERTY
HEALTHCARE GROUP, INC., LIBERTY
COMMERCIAL HEALTH SERVICES, INC.,
LIBERTY DIRECT SERVICES CORP., LIBERTY
HOME PHARMACY CORP., LIBERTY MARKETPLACE,
INC., LIBERTY MEDICAL SUPPLY PHARMACY,
INC., LIBERTY THERAPEUTIC SHOE CORP.,
STEPHEN C. FARRELL, AND WARREN KEITH
TROWBRIDGE,

     Defendants.

_____/



FILED by _____ D.C.

FEB 1 2 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## REPORT AND RECOMMENDATION ON PLAINTIFFS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT (DE 623)

THIS CAUSE comes before this Court upon the above Motion. Having reviewed the Motion, the Response and Reply thereto, their various attachments, the Plaintiffs' Statement of Material Facts, the Defendants' Statement of Material Facts as to Which There Exist a Genuine Issue to be Tried, and the other pertinent portions of the record, this Court recommends as follows:

### BACKGROUND

1.   The corporate Defendants are owned by or are subsidiaries of PolyMedica Corporation and constitute a common

Page 1 of  24

enterprise in the retailing of diabetes-related medicine and goods. PolyMedica, a Massachusetts corporation, operates its daughter corporations in Port St. Lucie, Florida. There is no dispute regarding the Defendants' status as employers and the applicability of the Fair Labor Standards Act ("FLSA") to them.

2. The Plaintiffs number nearly 300 current and former hourly-paid employees of these corporate Defendants. The Defendants emphasize that they worked in at least 36 different departments spanning 13 different divisions with 75 different supervisors amongst them. Still the Defendants all utilized a common payroll system and shared common personnel policies which Liberty Medical Supply, Inc., administered until Liberty Healthcare Group, Inc., took these tasks over in 2003. The Plaintiffs complain that two of the Defendants' payroll practices wrongfully reduced their overtime compensation, thereby violating the FLSA.

3. The first disputed practice is referred to as the "lunch break rule" whereby the timekeeping system forces automatic deductions for break times. That is, the system automatically deducts a 30-minute break regardless of how long employees actually took for their lunch or whether they took one at all. The system also automatically extends non-meal breaks to 30 minutes if those breaks lasted between 16 and 29 minutes in duration.

4. The Defendants explain that it is their policy to

Page 2 of 24

require employees to take a full 30-minute lunch break if they work longer than six hours. (However the Plaintiffs present deposition testimony from various corporate officials of an unofficial policy allowing or even encouraging employees to work through their lunches since this time of day had the highest call volume.) The employees' two allotted 10-minute breaks are paid but the lunch break is not. Keeping track of actual work and break times had proved problematic. The Defendants describe having "a significant problem with many employees" taking lunch without punching out, or if they did punch out, punching back in before returning to work. To ward against this problem the Defendants dispensed with their punch-clock time system and replaced it with a biometric hand-scan system known as "E-TIME".

5.    At this point it should be stressed how the biometric system kept an exact running log of employees' actual punch times, including for breaks. The Plaintiffs provide an example log at Exhibit E (Attachment No. 4) to DE 620 in order to illustrate this. The log shows for instance that on June 3, 2002 employee no. 13824 started work at 8:12 a.m.; from 10:01 to 10:14 she took her morning break; from 1:08 to 1:39 she was out for lunch; from 4:55 to 4:58 she took her afternoon break; and at 7:01 p.m. she went home. The Defendants' Payroll Accountant, Lisa Terracino, confirmed at deposition (found at Exhibit P (Attachment No. 12) to DE 624) the accuracy of the E-TIME system. The length of these breaks governed in turn how the system

Page 3 of  24

computed the automatic deductions.

6.     These automatic deductions were not absolute. The Defendants describe a "checks and balances" system which allowed supervisors to override them. The Defendants are vague whether employees first had to seek permission before working through lunch, but in any event it appears that "changes to the E-TIME and timesheet" could be made by supervisors upon employee request after the fact. The August 2002 Employee Handbook provides brief instruction on how to correct this sort of "Error in Pay". The explanation makes clear that the supervisor judges the necessity of the correction. In other words, employees did not have access to the E-TIME system and could not correct the deductions themselves.

7.     Every two weeks, prior to pay day, employees then received a hard copy printout of their timesheets as recorded by E-TIME for their review. This accorded them a second opportunity to make changes. Lastly, the employees' pay stubs "set forth the day-by-day punch-in and punch-out detail for which they were actually paid." This provided employees an opportunity to confirm proper compensation "and that no automatic deduction was taken for time actually worked."

8.     The Plaintiffs raise no allegation of duplicity in the system's administration. The Plaintiffs do not allege that they were informally pressured to work off-the-clock or that override requests were unfairly denied. To the contrary, it appears that

the Defendants honored every override request.

9.    The Plaintiffs complain that a second payroll practice further reduced their overtime compensation. Until about April 2005 the Defendants paid them their incentive pay separately when it should have been added to their regular pay rate in calculating overtime pay. The Defendants neither dispute that the incentive pay was non-discretionary in nature nor deny leaving it out of the overtime calculations. What the Defendants contend is that 49 of the Plaintiffs were exempt from this FLSA regulation at various times during their employment by virtue of earning commissions accounting for more than 50% of their gross wages.

10.    An element of the Plaintiffs' claims concerns whether the above pay practices amounted to a willful violation of the FLSA. In a company memorandum, effective March 14, 1995, employees were informed that for every minute late from break, six minutes would be deducted and for every occasion of forgetting to clock in, 15 minutes would be deducted. The Plaintiffs provide a copy of this memorandum (found at Exhibit Z (Attachment No. 22) to DE 624) executed by an employee on April 30, 1997. The Defendants object to the Plaintiffs' characterization of this system as "punitive" and further contend that the memorandum is inadmissible evidence. When the Defendants switched their timekeeping to E-TIME, the new system did not come with default automatic deductions; the Defendants had to set them specially.

Page 5 of  24

11.    There is little information concerning the genesis of the E-TIME automatic deductions. The Defendants do not recall any details about the system change or even its exact date of implementation. They say that the change occurred sometime in 1999 or 2000 although several employees and other items of evidence indicate that automatic deductions were used in 1998. The first written notification of the lunch break rule is found in the Defendants' August 2002 Employee Handbook, although employees were aware of it beforehand. The August 2002 Employee Handbook however did not instruct employees on how to request an override. In the deposition of the Defendants' former Payroll Manager, Nora Crawford k/n/a St. Pierre stated that in 2000 the Defendants established a protocol for training supervisors on how to perform overrides, but the Defendants dispute whether this "protocol" specifically addressed automatic deductions.

12.    With respect to the exclusion of incentive payments from overtime pay calculations, the Defendants assert generally that they "considered the issue . . . over a lengthy period of time internally and, ultimately, with the assistance of outside counsel." The Defendants add no details regarding their research into the matter, although they are very particular in their objections to the Plaintiffs' narration. In 2000 Nora St. Pierre first "questioned if the calculations were being done properly" and "questioned the setup of payroll and the calculation of payroll". While the Defendants dispute whether Ms. St. Pierre

approached Kuldeep Hajela, the Vice President of Finance, "about
her concern that Liberty was not correctly including all
remuneration in the calculation of the regular rate of pay'",
they leave undisputed that Mr. Hajela "explained to her that he
believed Liberty was acting correctly in not including the
incentive pay in the overtime calculation." Similarly while the
Defendants admit that Jim Foxworth, the official in charge of
Human Resources, inquired of the Payroll Manager, Javier Cintron,
Mr. Cintron's supervisor, Mr. Hajela, the company president,
Keith Trowbridge, and Messrs. Steve Veiner and Jonathan Starr,
from 2000 through 2003 or 2004 about the proper method of
overtime calculation, the Defendants dispute whether Mr. Foxworth
raised the inquiry in the context of FLSA compliance.

13.    In any event Mr. Foxworth said the matter was still
unresolved when the instant litigation started. Mr. Starr
described the issue as "open" making the necessary change only
after it "appeared" they were wrong. Lastly the Plaintiffs point
out that Mr. Veiner, a graduate of the Wharton School of
Business, "knew that the Fair Labor Standards Act was related to
the controversy regarding the resolution of the incentive and
overtime pay issues."

14.    The last facet of the Plaintiffs' claim concerns their
damages calculations. Through ¶¶ 29-48 of their Statement of
Material Facts, the Plaintiffs describe the basis by which they
subtracted the automatic deductions, substituted the actual hours

Page 7 of  24

worked, and apportioned their incentive pay in order to derive an objective calculation of outstanding overtime pay. The Defendants leave unchallenged the Plaintiffs' method or formula for making this calculation. They do dispute whether "the punch-in and -out data are accurate records of time 'worked', let alone the most accurate records of time 'worked'". They further contend that after "utilizing the exact same data . . . and assuming all of the [Plaintiffs'] allegations to be true", they calculate the maximum potential three-year damages for all Plaintiffs except three to total $381,881.93 or 20% less than the Plaintiffs' total figure.

15.   The parties do not request, and this Court sees no need for, a hearing on the Motion. The parties' legal memoranda and the evidence accompanying them provide amble basis on which to rule.

## DISCUSSION

A movant is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. See Fed. R. Civ. P. 56, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. See Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). Notwithstanding this

presumption, the Defendants, the non-moving party here, must come forward with facts showing a genuine issue for trial sufficient to sustain a jury verdict in their favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In short, the Defendants must offer, and not just plead, specific contrary facts; the proffered evidence must be significantly probative and not based on mere assertion or be merely colorable. See Fed. R. Civ. P. 56(e), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also, Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785-86 (11th Cir. 2005), Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993), Vardaq v. Motorola, Inc., 264 F.Supp.2d 1056, 1058 (S.D. Fla. 2003). In this way, Rule 56 serves to eliminate the needless delay and expense to the parties and to the Court of an unnecessary trial.

Before turning to the parties' various arguments for and against summary judgment, it is helpful to first take a big picture view of the issues. The payroll practices in dispute here were implemented on a company-wide basis and uniformly applied to all hourly employees, including the Plaintiffs. The disputed practices indeed could be described as fully automated requiring minimal human discretion and generating a minute-by-minute record of the Plaintiffs' work times. Thus one of the by-products of this system was extensive timekeeping and payroll records, and the instant Motion derives from the Plaintiffs' compilation of those records. As a consequence of both the nature of the payroll

practices and the extent of documentation, there are few, if any,
open questions of material fact or credibility disputes. <u>Compare</u>
<u>Dole v. Solid Waste Servs., Inc.</u>, 733 F.Supp. 895 (E.D. Penn.
1989). The issues now before the Court turn instead on a legal
analysis of whether those practices, such as they are, violated
the FLSA.

Title 29 U.S.C. § 207(a)(1) of the FLSA requires employers
to pay their employees at one and one-half their regular rate of
pay for their overtime work, i.e., for a workweek longer than
forty hours. The Plaintiffs first seek a ruling that the
Defendants' lunch break rule violates this provision to the
extent it undercounted their overtime hours. The Defendants do
not directly challenge the existence or effect of their lunch
break rule; they do not dispute the Plaintiffs' description of
its mechanics or that it results in lost work time. Their
objection instead is essentially one of waiver since employees
may request a system override.

At first blush the Defendants' argument sounds compelling:
the Plaintiffs had the opportunity to make corrections but
evidently for the damages claimed herein chose not to do so.
Moreover this Court adds that the Plaintiffs make no allegation
of any tacit or unofficial discouragement to requesting an
override. Under FLSA, however, this point is unavailing. First
there is no express waiver or settlement agreement regarding the
Plaintiffs' wage claims. Of equal force is the nonwaivable nature

of the rights accorded employees under the FLSA; these rights "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981). Such an affirmative defense therefore is precluded as a matter of law. The Defendants' contention also fails for practical reasons. It presumes that aggrieved employees not only know of the override option simply as the means to make a correction — but that they also know of the legal right to full compensation and know to vindicate that right by requesting the override. The Defendants however cite to no legal authority that employees must preserve their overtime rights in this fashion. Indeed the Defendants point to no case law where employees were precluded from raising their FLSA claims because they accepted their paychecks as is.

The premise of this defense is that the end result after processing the automatic deductions and any override requests is the most accurate time record. The Defendants then take a different approach and question the reliability of the underlying punch log itself. They allege employees would eat their lunch at their desks so that the biometric system would not punch them out for the break. The Defendants thereby seek to create a dispute of fact over whether the Plaintiffs were actually working when they were still on the clock. This defense runs contrary to FLSA law

Page 11 of 24

and in several respects. To the extent it implies the overtime
work was unauthorized, the Plaintiffs still are not precluded
from raising their claims. Simply put, and to summarize the
relevant portions of the FLSA, if the Defendant benefitted from
the Plaintiffs' labor, then the Defendant should compensate them
accordingly. 29 C.F.R. § 785.11 makes clear that "work not
requested but suffered or permitted is work time." Thus, if an
employee voluntarily works through an otherwise unpaid break or
stays late to finish a task, the time is compensable. The same
legal result occurs if the employees ate at their desks while
continuing with their work so long as the meal period was spent
predominantly for the employer's benefit. See Avery v. City of
Talladega, Ala., 24 F.3d 1337, 1347 (11th Cir. 1994).

     To the extent the Defendants imply that the Plaintiffs went
completely idle without punching out for their meal break, they
fail to raise sufficient evidence to defeat summary judgment.
Rule 56 clearly obligates parties to make a substantive showing
in opposing a motion for summary judgment. Here, however, the
Defendants point to only anecdotal commentary from nine
Plaintiffs' depositions that at times employees did not clock out
for lunch. Even assuming that on these occasions the employees
were truly idle (an entirely unsubstantiated predicate), the
Defendants make no showing of this practice's frequency or
pervasiveness. Without some sort of detail, context, or
corroboration, the contention remains conclusory and even

Page 12 of  24

contradictory to other parts of their defense. One such contradictory point is the admittedly precise nature of a biometric punch system.

The defense prompts point an inquiry into whose burden it is to keep accurate time records. The FLSA lays this responsibility clearly with the Defendants as the employer and regards the employer's punch clock records as the best evidence of time worked. See Colindres v. Quietflex Mfg., 427 F.Supp.2d 737 (S.D. Tex. 2006) (finding the actual punch time shown in the defendants' time records better accounts for work time than the scheduled shift time by which the employees were paid does). The Defendants however do little to overcome the presumption that the actual punch logs are inaccurate. Additionally the Defendants carry a concomitant obligation to ensure that their employees are actually working while on the clock. Cf. Reich v. Dept. of Conservation & Natural Res., 28 F.3d 1076, 1083 (11th Cir. 1994). Even if this Court were to find some degree of inaccuracy in the actual punch logs, the Defendants still would have "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence", Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), a burden of proof which the Defendants do not meet.

It does not appear that the Plaintiffs are seeking to declare the lunch break rule a per se violation of the FLSA. If

Page 13 of 24

they had, this Court could not concur since ordinarily meal periods are not compensable, see 29 C.F.R. § 785.19, and since the Plaintiffs were accorded an override option. Whether the lunch break rule is, itself, violative of the FLSA is not the dispositive issue, however. What is relevant is the effect of the lunch break rule and whether the lunch break rule, as applied, undercounted the Plaintiffs' overtime hours. See, e.g., Enright v. CGH Med. Ctr., 1999 WL 24683 (N.D. Ill. 1999) and Metzler v. Hickey's Carting, Inc., 1997 WL 570937 (E.D.N.Y. 1997). For reasons explained above, this Court finds as a matter of law that the practice did undercount overtime hours in violation of the FLSA. In footnote 6 of their Response the Defendants raise the additional argument that "many or possibly most of the 'lunch break' claims are not FLSA claims at all." FLSA law is such that an employee can seek minimum wage or overtime compensation only (and hence no straight or "gap" time). Since many weeks Plaintiffs worked no overtime at all, the Defendants reason that this undermines their ability to pursue their FLSA claims, especially on a collective basis. This argument is unavailing however since it ignores the system-wide nature of the timekeeping deficiency and the many other weeks in which the Plaintiffs did incur uncompensated overtime hours. Compare Green v. Dallas County Sch., 2005 WL 1630032 (N.D. Tex. 2005) (holding that because Green never worked more than forty hours in a week, her employer could not possibly have violated Section 207)

(emphasis added).

With respect to the second component of the Plaintiffs' claim — the miscalculation of their incentive pay — the Defendants raise no substantive objections. However they do claim that 49 of the Plaintiffs are exempt under the "retail or service establishment" exemption. 29 U.S.C. § 207(i) provides that an employer who is a retail or service establishment need not pay overtime if (1) the employee's regular rate of pay exceeds the minimum wage and (2) more than half the employee's compensation for a representative period (not less than one month) represents commissions on goods or services. These elements are developed further in the regulations. 29 C.F.R. § 779.313, for example, sets forth the criteria for judging whether an employer constitutes a retail or service establishment; the Wage and Hour's Field Operations Handbook uses the plain meaning of "commissions" as "a percentage of the amount of monies paid out or received"; and two particular Wage and Hour Opinion Letters (FLSA2006-15NA (June 29, 2006) and FLSA2005-53 (Nov. 14, 2005)) exclude "flat fees 'paid' without regard to the value of the service performed" as commissions. The Plaintiffs object to the Defendants' invocation of this exemption on the grounds that Defendants offer no substantive proof of their status as retail or service establishment and their inclusion of all incentives without regard to whether they derive from bona fide commissions or flat fees.

The Defendants raise the exemption issue in order to inject a dispute of material fact "insomuch as application of the defense mandates its individualized application to each of the 49 Plaintiffs" and for each applicable quarter. In one sense the Defendants are correct: the way in which the argument presently is framed precludes this Court from ruling on the exemption's merits as a matter of law. The Defendants limit their argument to two paragraphs in their Response and omit a full factual predicate supporting its existence, either generally or individually with respect to each of the 49 Plaintiffs and each of the relevant time periods. It is doubtful however whether the exemption issue constitutes a true disputed fact for Rule 56 purposes. This is because the Defendants, as the employer, bear the burden of proving the exemption, and what is more, overtime exemptions are construed narrowly against the employer. See Avery, 24 F.3d at 1340. This suggests that the Defendants should have brought it in their own summary judgment motion rather than as a disputed fact here. Since the deadline for filing dispositive motions has since passed, that opportunity is foreclosed.

However, should the District Court permit them to raise the issue now and find that there are disputes of material fact sufficient to warrant its submission to the jury, it does not affect the overall outcome of this Court's ruling. The exemption would only apply to a very small subset of the Plaintiffs and

Page 16 of   24

even then only apply for particular time periods. This issue can easily be spliced from the overall case and addressed separately and independently.

The foregoing establishes the Defendants' liability — that the two complained of payroll practices resulted in underpayment of overtime and hence violated the FLSA. The remaining issue — the calculation of damages (the unpaid overtime) — likewise lends itself to disposition as a matter of law. This Court begins this second half of its discussion with the Plaintiffs' formula for calculating the amount of unpaid overtime.

With the Plaintiffs' actual hours of work and incentive payments well documented, the only task left is to plug that information into the correct formula. This Court has verified the Plaintiffs' calculus against the Department of Labor's prescribed methods of calculation, see 29 C.F.R. §§ 778.110, .209, and .331, and finds it consistent. The Defendants' only objection on this is to point out some simple math errors in the Plaintiffs' exemplary calculation in their Motion. As made evident in the Plaintiffs' Notice of Scriveners Error (DE 641), these sort of math errors are easily corrected and verifiable. The Defendants then expand upon this objection and say that their computation of the figures yields a different damages sum altogether. Again, the Defendants raise no substantive challenge to the calculus, just to the arithmetic involved, and importantly they do not explain why their arithmetic differs. Simply saying that their figures

Page 17 of  24

add up differently than the Plaintiffs albeit under the same
calculus does not create a disputed material fact precluding
summary judgment.

Necessitating greater judicial inquiry is the question of
the statute of limitations on these overtime claims. The standard
statute of limitations is two years, but if the employer
willfully violated the FLSA, then the statue of limitations
extends to three years. See 29 U.S.C. § 255(a). To help
distinguish between an ordinary and a willful violation, the
Supreme Court explained that the latter involves action that is
voluntary, deliberate, or intentional and hence greater than mere
negligence. As such, an employer acts willfully if it "either
knew or showed reckless disregard for the matter of whether its
conduct was prohibited by the [FLSA]." McLaughlin v. Richland
Shoe Co., 486 U.S. 128, 133 (1988). It is the Plaintiffs' burden
of proof to demonstrate the Defendants' willfulness. See Adams v.
U.S., 350 F.3d 1216, 1229 (Fed. Cir. 2003).

To meet their burden the Plaintiffs emphasize the
Defendants' longstanding use of the disputed payroll practices.
The use of forced deductions go back at least as far as 1995, and
were specially incorporated into the Defendants' new timekeeping
system in 1999 or 2000. Despite the long history of the lunch
break rule or its progenitor it was the subject of very little
official instruction. Its first written mention appeared in the
August 2000 Employee Handbook and still was addressed very

Page 18 of  24

briefly. Of course the Defendants also provided an override option — a somewhat bureaucratic process that effectively shifted the burden of compliance onto the employees — but at least by all accounts, was administered fairly. The circumstances surrounding the incentives miscalculations weigh far more predominantly in the Plaintiffs' favor. Concerns about this matter seem to have been a constant worry in the Human Resources department all the while upper management and the owners gave no substantive, proactive response until after the commencement of the instant lawsuit.

Of course willfulness is a question often fact-driven and incompatible with a summary ruling, and one which some courts have been more comfortable sending to the jury, see, e.g., Fowler v. Land Mgt. Groupe, Inc., 978 F.2d 158, 162-63 (4th Cir. 1992) and Friedman v. So. Fla. Psychiatric Assocs., Inc., 139 Fed.Appx. 183, 185-86 (11th Cir. 2005) (in the context of "good faith"). But even a fact-centered issue need not be tried if there is no factual dispute; for an employer to send the willfulness issue to the jury, it must raise some substantial showing of what facts would permit the jury to rule in its favor. Thus this Court evaluates what evidence contradicts the Plaintiffs' claim. Here the Defendants focus on the fact that the Plaintiffs never perceived the lunch break rule as intentionally wrong and that the incentive pay miscalculation was subject to lengthy deliberation and review "ultimately, with the assistance of

outside counsel". Interestingly, however, these factual
assertions, even if taken as true, pose no real counterweight to
the willfulness issue, and instead tend to support the
Plaintiffs' allegations. Also supporting the Plaintiffs'
allegations is how much the Defendants' leave unstated and
unexplained.

While they highlight their lengthy internal and outside
research into the matter, the Defendants have no fruit of this
effort to show. These deliberations generated no reports or
opinion letters suggesting FLSA compliance. The Defendants
identify no answers to Human Resources' inquiries on the subject.
Even now they offer no counter-argument on the subject of FLSA
liability, leaving their practices undefended against the FLSA's
relatively simple and clear FLSA overtime standards. The
Defendants seek to emphasize that the inquiries were not raised
in the context of the FLSA, specifically, but this only
contradicts and undermines their claim of lengthy deliberations
on FLSA compliance. If Human Resources and upper management
discussed overtime calculations wholly separate and apart from
the FLSA, then that in of itself is problematic. Even if the FLSA
was the topic of consideration, its mere consideration is
insufficient. The employer must point to some result of the
consideration process — a determination, and "an employer's
failure to make a determination that a practice violates the FLSA
supports a conclusion of recklessness," see Preston v. Settle

Page 20 of  24

Down Enter., Inc., 90 F.Supp.2d 1267, 1278 (N.D. Ga. 2000)
(citing LaPorte v. GE Plastics Business Group, 838 F.Supp. 549
(M.D. Ala. 1993). With respect to the lunch break rule the
Defendants make no mention whatsoever of whether it was
considered against FLSA's requirements, much less whether a
compliance determination was reached. Indeed the Defendants are
fully ignorant of many basic details surrounding the lunch break
rule's genesis other than to say it was instituted to prevent on-
the-clock breaks (as opposed to say on an assumption that
employees usually took lunch breaks as in Enright, supra). The
Defendants therefore present insufficient grounds to warrant
submitting the willfulness issue to the jury, and consequently,
this Court finds willfulness as a matter of law. See Herman v.
Palo Group Foster Home, Inc., 976 F.Supp. 696, 705, n. 7 (W.D.
Mich. 1997).

The Plaintiffs also seek a summary ruling on their
entitlement to liquidated damages. For an FLSA violation 29
U.S.C. § 216(c) makes the infringing employer liable for both the
past due wages — established above — but also an equal amount of
liquidated damages. This is the standard damages framework, and
despite the "liquidated" term of reference, it is considered
compensatory rather than punitive. A court does have discretion
however to remit the liquidated damages, either in full or in
part, "if the employer shows to the satisfaction of the court
that the act or omission giving rise to such action was in good

Page 21 of  24

faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. It is the employer's burden of proof. The case of <u>Reich v. So. New England Telecomm. Corp.</u>, 121 F.3d 58, 70-72 (2nd Cir. 1997) provides a thorough discussion of FLSA's liquidated damages and good faith defense.

"'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." <u>Reich</u>, 121 F.3d at 71. <u>See</u> <u>also</u>, <u>Friedman</u>, 139 Fed.Appx. at 186 ("'[G]ood faith requires some duty to investigate potential liability under FLSA.'"). But as the preceding willfulness ruling makes clear, the Defendants did the opposite: they were evasive. Consequently the Plaintiffs are entitled as a matter of law to an award of liquidated damages. Thus the Plaintiffs prevail on their Second Amended Complaint. They establish that the two disputed timekeeping/payroll practices — the lunch break rule and incentive pay exclusion — undercounted their overtime compensation. They are entitled to liquidated damages, and because the Defendants acted willfully, they may collect for the three years preceding their respective Notices to Opt-In. Lastly the record is such that the amount of damages lend themselves to objective calculation. Of course, this summary judgment ruling is subject to this Court's rulings on the other motions now pending

Page 22 of 24

before it.

CONCLUSION

This Court is cognizant of the import of entering summary judgment on such a myriad of issues, some of which seem fact-dependent at first blush. As a concluding thought this Court therefore re-emphasizes how the particular nature of the violations and its well-documented effect lent themselves especially well to summary disposition. Similar summary rulings are certainly known in the case law. See, e.g., Herman, supra, Reyna v. Conagra Foods, Inc., 2006 WL 3667231 (M.D. Ga. 2006), Brown v. L&P Indus., LLC, 2005 WL 3503637 (E.D. Ark. 2005). This Court has researched the issues raised in this case extensively both independently and as framed in the parties' papers. Having done so, this Court finds the Plaintiffs' arguments most persuasive, especially their Reply which effectively answers many key questions.

ACCORDINGLY, this Court recommends that the Plaintiffs' Amended Motion for Partial Summary Judgment be GRANTED.

In light of the upcoming Calendar Call and trial date, the parties shall have until February 16, 2007 within which to file objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Any responses to objections, in turn, shall be due noontime February 20, 2007.

Page 23 of 24

DONE AND SUBMITTED in Chambers at Fort Pierce, Florida, this
_12th_ day of February, 2007.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc: Hon. K. Michael Moore
    Mark A. Cullen, Esq.
    Haas A. Hatic, Esq.

Page 24 of  24

# EXHIBIT C

# TO PLAINTIFFS'

# REPLY TO DEFENDANT'S

# OPPOSITION TO PLAINTIFFS'

# MOTION FOR CONDITIONAL

# CLASS CERTIFICATION

FILED
2006 Jun-02 AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION


DILMPA COWAN,
TALYNDA POINTER, AND
SHEREKA MILLER COWAN

PLAINTIFFS,                    CIVIL ACTION NO. CV-06-BE-0910-E

V.

TALLADEGA HEALTHCARE CENTER, INC.

DEFENDANT.                    TRIAL BY JURY REQUESTED


## AMENDED AND RESTATED COMPLAINT

COME NOW the Plaintiffs by and through the undersigned attorneys, and for

the causes of action, states the following:

I.    JURISDICTION AND VENUE

1.    This action for injunctive relief and damages is brought pursuant to the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*  District Court jurisdiction

exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. §1331.  An Opt-in

Collective Action is sought under FLSA 16(b).

II.    PARTIES

2.    Plaintiff Dilmpa Cowan (hereinafter "D. Cowan") is a resident of

Talladega County, Alabama and performed work for the Defendant in the counties composing the Northern District of Alabama, and throughout the United States. D. Cowan is an employee within the contemplation of 29 U.S.C. § 203)(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

3.    Plaintiff Taylnda Pointer (hereinafter "Pointer") is a resident of Talladega County, Alabama and performed work for the Defendant in the counties composing the Northern District of Alabama, and throughout the United States. Pointer was an employee within the contemplation of 29 U.S.C. § 203)(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

4.    Plaintiff Shereka Miller Cowan (hereinafter "S. Cowan") is a resident of Talladega County, Alabama and performed work for the Defendant in the counties composing the Northern District of Alabama, and throughout the United States. S. Cowan is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §    1391(b), venue for this action properly lies in the Northern District, Eastern Division.

5.    Plaintiff Shelia Barclay (hereinafter "Barclay") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing

2

the Northern District of Alabama and throughout the United States. Barclay was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

6.    Plaintiff Dinnah Burt (hereinafter "Burt") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Burt is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

7.    Plaintiff Kris Cowan (hereinafter "K. Cowan") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. K. Cowan was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

8.    Plaintiff Ernestine Curry (hereinafter "Curry") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Curry was an

3

employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

9.      Plaintiff Lakeya Deal (hereinafter "Deal") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Deal is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

10.      Plaintiff Selester Debardelabon (hereinafter "Debardelabon") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Debardelabon is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

11.      Plaintiff Latecia Elston (hereinafter "Elston") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Elston is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28

4.

U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

12.    Plaintiff Denson Garrett (hereinafter "Garrett") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Elston is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

13.    Plaintiff Sara Harrell (hereinafter "Harrell") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Harrell is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

14.    Plaintiff Cecelia Hawkins (hereinafter "Hawkins") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Hawkins is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern

5

District, Eastern Division.

15.    Plaintiff Latasha Heard (hereinafter "Heard") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Heard was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

16.    Plaintiff Amy McKenzie (hereinafter "McKenzie") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. McKenzie is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

17.    Plaintiff Francine Rene (hereinafter "Rene") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Rene is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in the Northern District, Eastern Division.

6

18.    Plaintiff Larry D. Reynolds (hereinafter "Reynolds") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Reynolds is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §    1391(b), venue for this action properly lies in the Northern District, Eastern Division.

19.    Plaintiff Annette Roberson (hereinafter "Roberson") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Roberson is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §    1391(b), venue for this action properly lies in the Northern District, Eastern Division.

20.    Plaintiff Jennifer Simmons (hereinafter "Simmons") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Simmons was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §    1391(b), venue for this action properly lies in the Northern District, Eastern Division.

21.    Plaintiff Mary Strown (hereinafter "Strown") is a resident of Talladega

7

County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. Strown is an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §  1391(b), venue for this action properly lies in the Northern District, Eastern Division.

22.    Plaintiff Angela Wilson (hereinafter "A. Wilson") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. A. Wilson was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §  1391(b), venue for this action properly lies in the Northern District, Eastern Division.

23.    Plaintiff Michael Wilson (hereinafter "M. Wilson") is a resident of Talladega County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama and throughout the United States. M. Wilson was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. §  1391(b), venue for this action properly lies in the Northern District, Eastern Division.

24.    Attached hereto as Exhibit A (collectively) are consents of Barclay, Burt, K. Cowan, Curry, Deal, Debardelabon, Duncan, Elston, Garrett, Harrell, Hawkins,

8

Heard, McKenzie, Rene, Reynolds, Roberson, Simmons, Strown, A. Wilson and M. Wilson.

25.    Defendant, Talladega Healthcare Center, Inc.("Defendant"), is registered and does business in the State of Alabama. Defendant is engaged in commerce or in the production of goods for commerce as contemplated by 29 U.S.C. §§ 203(r), 203(s). Defendant is a company doing business in the State of Alabama.

## III.    FACTUAL SUMMARY

26.    Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 25 above as if fully set forth herein.

### A.    *Dilmpa Cowan*

27.    D. Cowan worked for Defendant on two occasions, the most recent starting in June of 2005 and continues to date.

28.    D. Cowan has been employed as a cook/utility person. She has been paid at the rate of $6.73 per hour, and is entitled to a .50 per hour incentive pay.

### B.    *Talynda Pointer*

29.    Pointer began work for Defendant in 2003 and worked until 2004.

30.    Pointer has been employed as a CAN, TPN and dietary worker. She has been paid at the rate of $7.00 per hour, and is entitled to a .50 per hour incentive pay.

### C.    *Shereka Miller Cowan*

9

31.    S. Cowan began work for Defendant on March 12, 2002 and continues to date.

32.    S. Cowan has been employed as a CNA. She has been paid at the rate of $8.05 per hour, and is entitled to a .50 per hour incentive pay.

**D.    *Shelia Barclay***

33.    Barclay began working for Defendant in September of 2004 and was employed until December 31, 2004.

34.    Barclay was employed as a dishwasher and server. Barclay was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

**E.    *Dinnah Burt***

35.    Burt began working for Defendant on December 12, 2004, and continues to be employed with Defendant.

36.    Burt is employed in the dietary department at the rate of $5.69 per hour. Burt is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

**F.    *Kris Cowan***

37.    K. Cowan worked for Defendant from January 10, 2005 until May of 2006.

38.     K. Cowan was employed in the dietary department as a dishwasher. K. Cowan was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

G.     *Ernestine Curry*

39.     Curry began working for Defendant in 1974 and was employed until 2004.

40.     Curry was employed in the dietary department as a cook and cook helper. Curry was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

H.     *Lakeya Deal*

41.     Deal has been working for Defendant since December 15, 2004

42.     Deal is employed in the dietary department as a cook. Deal is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

I.     *Selester Debardelabon*

43.     Debardelabon began working for Defendant on March 14, 2005, and is currently employed with Defendant.

44.     Debardelabon is employed in the dietary department at the rate of $5.69 per hour. Debardelabon is deducted 30 minutes per day by Defendant for lunch

11

whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

### J.    *Latecia Elston*

45.    Elston worked for Defendant from June 24, 1997, until June 5, 2006.

46.    Elston was employed as a Certified Nurse Assistant. Elston was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

### K.    *Denson Garrett*

47.    Garrett worked for Defendant for the years 2003 through 2005.

48.    Garrett was employed as a laundry man. Garrett was deducted 30 minutes per day by Defendant fort lunch whether taken or not resulting in a reduction in his hourly pay of up to 2.5 hours per week.

### K.    *Sara Harrell*

49.    Harrell began working for Defendant in December of 1997 and is currently employed with Defendant.

50.    Harrell is employed with Defendant as a Certified Nurse Assistant. Harrell is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

### L.    *Cecelia Hawkins*

12

51.    Hawkins worked for Defendant from March of 1997 until February of 2004. Hawkins resumed working for Defendant in October of 2004, and continues to work for Defendant to date.

52.    Hawkins is employed with Defendant as a Certified Nurse Assistant. Hawkins is deducted 30 minutes per day by Defendant for lunch whether taken or not, resulting in  a reduction in her hourly pay of up to 2.5 hours per week.

**M.**    *Latasha Heard*

53.    Heard began working for Defendant in March of 2005 and was employed until July of 2006.

54.    Heard was employed as a Dietary Assistant. Heard was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

N.    *Amy McKenzie*

55.    McKenzie has worked for Defendant since September 15, 2004, and is currently employed with Defendant.

56.    McKenzie is employed as a Certified Nurse Assistant. McKenzie is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

O.    *Francine Rene*

57.    Rene began working for Defendant in March of 2004, and is currently employed with Defendant.

58.    Rene is employed as a Certified Nurse Assistant. Rene was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

P.    *Larry Reynolds*

59.    Reynolds began working for Defendant in October of 2001, and is currently employed with Defendant.

60.    Reynolds is employed in the housekeeping department. Reynolds is paid $6.40 per hour and is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

14

Q.    *Annette Roberson*

61.    Roberson began employment with Defendant in January of 2002, and is currently employed with Defendant.

62.    Roberson was employed as a housekeeper. Roberson is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

R.    *Jennifer Simmons*

63.    Simmons began working for Defendant in December of 2002 and was employed until February of 2004.

64.    Simmons was employed as a Certified Nurse Assistant. Simmons was paid at the rate of $7.15 per hour and was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

S.    *Mary Strown*

65.    Strown began working for Defendant on April 23, 2005, and is currently employed by Defendant.

66.    Strown is employed as a cook. Strown is paid at the rate of $6.21 per hour and is deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

15

T.    *Angela Wilson*

67.    A. Wilson began working for Defendant on July 5, 2005 and was employed until July of 2006.

68.    A. Wilson was employed as a Certified Nurse Assistant. A. Wilson was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

U.    *M. Wilson*

69.    M. Wilson began working for Defendant in July of 2004, and was employed until November of 2005.

70.    M. Wilson was employed as a maintenance technician. M. Wilson was deducted 30 minutes per day by Defendant for lunch whether taken or not resulting in a reduction in her hourly pay of up to 2.5 hours per week.

V.    *All Plaintiffs*

71.    Defendant relies upon an exception to the forty hour work week contained in the FLSA to pay employees overtime based on hours worked in excess of eight in a 24 hour period, and hours worked in excess of 80 in a fourteen day period.

72.    Each Plaintiff has regularly worked more than eight hours in a day and 80 in a two week period. They are not paid one and one-half times their regular hourly rate for all hours worked in excess of eight hours in a work day or 80 hours in a

16

fourteen day period as required by the FLSA. Defendant deducts .5 hour for lunch on a daily basis from the vacation pay of each Defendant which is a violation of the FLSA.

## IV.    COUNT ONE - OVERTIME VIOLATIONS

73.    Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 70 above as if fully set forth herein.

74.    Each Plaintiff and other similarly situated co-workers are paid some overtime hours at the rate of one and one-half times their regular hourly rate for hours worked in excess of 80 in a fourteen day pay period. They are not paid for other hours so worked in excess of 80 in a fourteen day pay period.

75.    Each Plaintiff is not regularly paid overtime in excess of 8 hours in a 24 hour period.

76.    Defendant has willfully violated the FLSA by requiring each Plaintiff to work over eight hours in a 24 hour work period or 80 hours in a fourteen day work period without paying them overtime at the rate of one and one-half times their regular hourly rate. Said violation is willful in knowing disregard of the FLSA causing damage to the Plaintiffs.

77.    As a result of Defendant's willful violation of the FLSA, each Plaintiff has been damaged suffering loss of pay.

17

## V.   COUNT TWO – MINIMUM WAGE VIOLATION

78.    Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 77 above as if fully set forth herein.

79.    Defendant arbitrarily deducts thirty minutes per day for an unpaid lunch period for each Plaintiff and similarly situated co-workers.

80.    Defendant deducts the thirty minute unpaid lunch break from hours shown each Plaintiff has worked without regard to whether or not each Plaintiff is actually allowed to take the full thirty minute lunch break.

81.    Each Plaintiff is not allowed uninterrupted time away from their work duties of thirty minutes per shift, yet Defendant deducts this pay regardless.

82.    As a result of Defendant's willful violations of the minimum wage law in failing to pay each Plaintiff at least minimum wage for the thirty minutes it deducts for an unpaid lunch period per shift per plaintiff and similarly situated employees, Defendant has willfully violated the minimum wage law causing damage to Plaintiffs.

83.    Defendant's willful violations of the minimum wage law have economically damaged Plaintiffs, causing them to "work off the clock."

## VI.   COUNT THREE – CONVERSION

84.    Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 83 above as if fully set forth herein.

18

85.    Defendant has willfully converted monies due and owing to each Plaintiff or which they have worked and yet not been paid.  These monies are composed of thirty minutes deducted per shift for unpaid lunch period, failure to pay incentive pay when due and owing, requiring Plaintiffs to work "off the clock."

86.    Defendant has converted these monies due and owing each Plaintiff for its benefit causing each Plaintiff's damage.

87.    Each Plaintiff demands of Defendant compensatory and punitive damages for Defendant's conversion of monies due and owing to each Plaintiff.

## VII.   COUNT FOUR -- OPT-IN COLLECTIVE ACTION

88.    Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 84 above as if fully set forth herein.

89.    Each Plaintiff brings this suit as an Opt-in collective action pursuant to the FLSA 16(b).

90.    The potential class is comprised of any and all persons employed as hourly employees by Defendant at any time during the three (3) years preceding the filing of this Complaint.

91.    Upon information and belief, Defendant is refusing to pay all hourly employees for time worked over forty hours. Therefore, the potential plaintiff class is so numerous that joinder is impracticable.

19

92.    Upon information and belief, the same practices alleged in the aforementioned paragraphs comprise violations of the FLSA against other employees, thereby presenting both common questions of law and fact common to the class.

93.    Upon information and belief, the claims of the representatives, Plaintiffs, are typical of claims of the class. Plaintiffs were subjected to the same unlawful employment practices concerning inaccurate reporting of time, failure to pay overtime pay, and other violations of the Fair Labor Standards Act, as were other members of the class.

94.    Upon information and belief, Plaintiffs will fairly and adequately protect the interests of the class in that they share common interests with the other members of the class and have employed counsel who will vigorously prosecute the interests of the class.

95.    Upon information and belief, the questions of law and fact common to the members of the class predominate over any questions affecting only individual members as the same practice of employing class members without paying them in accord with the FLSA was used by Defendant on all class members.

96.    Upon information and belief, this collective action is superior to other available methods to the fair and efficient adjudication of the controversy because of the large number of potential plaintiffs; because of the relatively moderate amount of damages available to Plaintiffs were they to commence an individual action; and, because of the predominate factual and legal questions common to all class members.

21

## VIII.  COUNT FIVE – RETALIATION

97.     Each Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 96 above as if fully set forth herein.

98.     Plaintiffs filed the original complaint in this action on May 12, 2006. Defendant was served on June 13, 2006.

99.     After being served with the complaint, Defendant has cut the hours of the Plaintiffs and other potential opt-in Plaintiffs, reducing them from an average of 37.50 hours per week to approximately 32 hours per week.

100.    As a result of the retaliation by Defendant, Plaintiffs and other potential opt-in Plaintiffs are now part-time employees instead of full-time employees with a loss of pay and benefits.

101.    Defendant willfully retaliated against Plaintiff for the filing of this action by reducing their hours.  Further, Defendant is seeking to interfere with other potential opt-in Plaintiffs from joining this action both by its punitive measures against Plaintiffs, as well as circulation of a threat of termination for those who join this action.

102.    Defendant has willfully violated the FLSA and the minimum wage law through its actions causing monetary damage and mental anguish with Plaintiffs.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray for the following relief:

A.    That the Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in this Complaint;

B.    That this Court award Plaintiffs the amount of their unpaid overtime wages, plus an additional equal amount as liquidated damages, compensatory damages, including mental anguish.

C.    That Plaintiffs be granted judgment against Defendant for all reasonable attorneys' fee, costs, disbursements, and interest;

D.    For such other and further relief as this Court deems equitable, proper and just.

Respectfully submitted,

/s/ David R. Arendall

DAVID R. ARENDALL

/s/ Allen D. Arnold

ALLEN D. ARNOLD
Counsel for Plaintiff

OF COUNSEL:
ARENDALL AND ASSOCIATES
2018 Morris Avenue
Birmingham, AL   35203
205.252.1550 – Office
205.252.1556 – Facsimile

23

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY FOR THE TRIAL OF THIS CAUSE.

/s/ David R. Arendall

_____

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2006, I filed a copy of the foregoing using the Court's CM/ECF system which will send a copy of the foregoing pleading on all counsel in this proceeding as set forth below:

Susan W. Bullock, Esq.
Ford & Harrison, LLP
2100 Third Avenue North, Suite 400
Birmingham, AL 35203

/s/ David R. Arendall

_____

Of Counsel

24

# EXHIBIT D

# TO PLAINTIFFS'

# REPLY TO DEFENDANT'S

# OPPOSITION TO PLAINTIFFS'

# MOTION FOR CONDITIONAL

# CLASS CERTIFICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DILMPA COWAN, et al., | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] |
| | ]    **CV-06-BE-0910-E** |
| TALLADEGA HEALTHCARE | ] |
| CENTER, INC., | ] |
| | ] |
| Defendants. | ] |
| | ] |

## ORDER

This case is before the court on Plaintiffs' Motion to Facilitate Court-Approved Notice Under 29 U.S.C. § 216(b) (Doc. 18). Upon reviewing the parties' submissions, the court finds that the motion is due to be GRANTED.

An action to recover the liability prescribed in the FLSA can be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective action treatment under § 216(b) reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *See Hoffman-La Loche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of the defendant-employer who desire to 'opt -in' and are 'similarly situated' with respect to their job

1

requirements and with regard to their pay provisions." *Dybach v. Fla. Dep't of Corr.*, 942 F.2d

1562, 1567-68 (11th Cir. 1991).

The Court of Appeals has suggested that district courts use a two-tiered approach to

determine whether to certify a class under § 216(b). At this early point in the current litigation,

the court will follow the first step of the suggested approach, the "notice stage":

> "At the notice stage, the district court makes a decision – usually
> based only on the pleadings and any affidavits which have been
> submitted – whether notice of the action should be given to
> potential class members.
>
> Because the court has minimal evidence, this determination is
> made using a fairly lenient standard, and typically results in
> 'conditional certification' of a representative class. If the district
> court 'conditionally certifies' the class, putative class members are
> given notice and the opportunity to 'opt-in.' The action proceeds as
> a representative action throughout discovery. . . ."

*Hipp*, 252 F. 3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F. 3d 1207 (5th Cir. 1995).

Additionally, the Court of Appeals has broadly construed the "similarly situated" requirement as

"more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42

(severance)." *Grayson v. KMart Corp*, 79 F. 3d 1086, 1096 (11th Cir. 1996). Plaintiffs have the

burden, "which is not heavy," of "demonstrating a reasonable basis for their claim." *Id.* at 1097.

Here, Plaintiffs have alleged that as a general practice, Defendant deducts a thirty minute

lunch break from employees' pay calculations, regardless of whether employees have actually

taken a break for lunch. Plaintiffs argue that – irrespective of Defendant's method of calculating

overtime – because of that standard thirty minute deduction, they are not receiving appropriate

overtime compensation when they in fact work more than a forty hour workweek, in violation of

the Fair Labor Standards Act. They have submitted at least eighteen declarations of consent

2

plaintiffs who claim to have been denied overtime pay based on the thirty minute deduction.

Using the "lenient standard" articulated by the Eleventh Circuit, the court finds that Plaintiffs have at least met their burden of demonstrating that they are similarly situated and that a reasonable basis exists for their claim for classwide relief. Whether the class can withstand the higher level of scrutiny at the close of discovery will be a question to address at that time. The court therefore CONDITIONALLY CERTIFIES this case as a collective action under 29 U.S.C. § 216(b).

The court hereby ORDERS the parties to meet and confer regarding the notice to be issued in this case. The court further ORDERS that, on or before October 30, 2006, the parties shall submit a **joint** proposed notice to the class for the court's review. In the event they are unable to agree upon a proposed notice, the court ORDERS the parties to appear before this court on October 31, 2006 at 10:00 a.m..

 DONE and ORDERED this 20th day of October, 2006.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT E

# TO PLAINTIFFS'

# REPLY TO DEFENDANT'S

# OPPOSITION TO PLAINTIFFS'

# MOTION FOR CONDITIONAL

# CLASS CERTIFICATION

## DECLARATION OF _____

My name is April Phillips Stockdale I am over the age of 19 years, and the following facts are personally known to me:

1. I worked at Talladega Healthcare from Jan. 2004, until Feb. 2005.

2. I was employed as a CNA .

3. My current address is 122 Curry Court .

4. The following handwritten facts are personally know to me:

During the time that I was employed at Talladega Heathcare they deducted 30 min. out my check daily and I never clocked out and at times I didn't take a break, And I also feel that I didn't receive all my over-time pay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 2 day of September , 2006.

April Phillips Stockdale
Signature

Print name: April Phillips Stockdale